## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1832, IN THE SIXTEENTH YEAR
OF THE STATE.

3b   1<br>124  560

## M'MAHAN v. KIMBALL.

The wife of a *cestui que trust* is not dowable, by the *English* law, of an estate
to which her husband had only an equitable title during the coverture; nor is
a widow dowable, by that law, of an estate mortgaged *in fee* by her husband
before marriage, and which was unredeemed at his death.

The *Indiana* statute has materially changed the law on this subject. The
widow is here entitled to dower in "all the lands, tenements, and heredita-
ments, either legal or *equitable*, whereof her husband or any other person to
his use, was seised at any time during the coverture;" and she has, conse-
quently, a right of dower in an equity of redemption on a mortgage *in fee*.

The clause in the statute, saying that the widow's dower shall not be considered
as sold or extinguished, by a sale of her husband's property by virtue of any
decree, execution, or mortgage, to which she is not a party,—has no relation
to a decree, &c. existing previously to the marriage.

A person having executed a mortgage *in fee* on his estate married, and after-
wards died without having redeemed the mortgage. Two of the three pay-
ments to secure which the mortgage was given, were due and unpaid at the time
of the mortgagor's death. The widow caused her dower in the estate to be
assigned to her, by a commissioner, under the statute. The mortgagee filed a
bill in chancery against the heir and personal representative of the mortgagor,
for a foreclosure and sale of the mortgaged premises; and a decree was ren-
dered for the complainant by an agreement of the parties. This decree required

1

May Term,
1832.

M'MAHAN
v.
KIMBALL.

that the premises should be exposed to sale by a commissioner according to law, and that, if they would *not sell for a sufficient sum to pay the mortgage-money and costs,* they should be delivered to the mortgagee in full satisfaction of the debt. The commissioner, afterwards, not being able to sell the premises for a sufficient sum to pay the mortgage-money, conveyed them to the mortgagee, according to the direction of the decree. *Held,* that the widow of the mortgagor was not, under these circumstances, entitled to dower in the premises.

The claim of a widow to dower in an equitable estate, under the statute, can be enforced only by a suit in chancery.

The assignment of dower by commissioners, under the statute, limits the extent of dower, but does not confer a legal right to it.

Monday,
May 28.

APPEAL from the *Washington* Circuit Court.

M'KINNEY, J.—The appellee declared in disseisin, claiming the possession of a lot of ground in the town of *Salem*, it being a part of in-lot numbered four, with the buildings and improvements thereon, of which she was, on the — day of ——, 1829, seised and possessed in her own right, &c. as of dower as the widow of *Nathaniel Kimball*, deceased;—that the defendant entered thereon, and disseised her, &c. To this declaration the defendant pleaded not guilty. Verdict of guilty, and damages assessed at 75 dollars. Judgment on the verdict; and the writ of *habere facias possessionem* awarded.

A bill of exceptions, taken by the defendant, presents all the evidence offered to the jury. This evidence is voluminous. The greater part consists of the proceedings had in the Circuit Court, on the application by the plaintiff for the assignment of her dower in the estate of her deceased husband *Nathaniel Kimball*, and of the proceedings in chancery upon a bill filed by *Haggarty* and *Austin* to foreclose a mortgage executed to them by said *Kimball* for the lot, a part of which is claimed by the plaintiff in this action. We will present a summary of this evidence in as condensed a form as practicable, in order the more fully to examine the ground upon which the parties respectively stand.

The plaintiff offered in evidence, 1st, a deed from *Edward Carvin* and wife to *Nathaniel Kimball* for the lot in controversy; 2d, a record of the marriage of *Nathaniel Kimball* to the plaintiff on the 13th day of *April*, 1828; 3d, a record of her application to the Circuit Court on the 14th day of *September*, 1829, for the appointment of commissioners to assign her dower in the lot claimed—the proceedings had on such application, embracing at large the petition, the appointment by the Court of

commissioners, their report, and its adoption by the Court, assigning and setting over to the applicant by metes and bounds the part of the lot claimed in the declaration; it further shows that *Haggarty* and *Austin* moved the Court to set aside the order appointing commissioners, and objected to the reception of the report for reasons filed, and offered proof in support of the same, which was rejected by the Court, and an exception taken to its opinion; 4th, the plaintiff also proved that the defendant, at the time of the institution of this suit, was in possession of the premises in dispute, a demand and refusal to deliver possession, that they were worth 90 dollars a year; further, that *Nathaniel Kimball* died in the possession of the same by tenant, and had had possession from the date of the deed to him from *Edward Curvin* and wife.

The defendant then introduced the following evidence:—1st, a mortgage executed on the 13th day of *July,* 1827, by *Nathaniel Kimball* to *Haggarty* and *Austin* for the lot, a part of which is claimed by the plaintiff, for the consideration of 3,000 dollars, (a previously existing debt,) to be paid in three equal annual instalments from the 6th day of *November,* 1826, with legal interest thereon, payable every 60 days in advance; 2d, a record of a suit in chancery brought by *Haggarty* and *Austin,* after the death of *Nathaniel Kimball,* against the heir and personal representatives of said *Kimball,* to foreclose the above mortgage; the decree rendered by agreement between the complainants and the guardian of the heir and the personal representatives of the deceased, which, among other things, required the mortgaged premises to be exposed to sale according to law by the sheriff of *Washington* county, who was appointed a commissioner; that all costs were first to be paid, and then the debts due to the mortgagees; that if the premises did not sell for a sufficient sum to pay the debt, costs, &c., they were to be delivered to the complainants in full satisfaction of all debts against the estate of the decedent. The record further shows that the premises did not sell for the debt, &c.; that agreeably to the decree they were delivered to the mortgagees and accepted by them, and that they received a deed for the same from the commissioner. It further appears that during the pendency of the suit, *Elmira S. Kimball,* the widow of *Nathaniel Kimball,* appeared in Court, made oath that she was the widow of the deceased, and that she believed herself entitled to dower

in the lot, and moved the Court to dismiss the suit for want of parties; and that this motion was overruled; 3d, a deed from *Haggarty* and *Austin* to *John M'Mahan*, defendant, for the lot in controversy.

From the evidence, it appears that *Nathaniel Kimball* died on the 12th day of *January*, 1829; that prior to his marriage to the appellee, a forfeiture of the condition of the mortgage occurred by the non-payment of 1,000 dollars, one of the instalments stipulated to be paid; that prior to his death a second instalment became due; that neither of these instalments was paid at the time of his death.

The defendant then moved the Court to instruct the jury as follows:—

1st, that the plaintiff, in order to maintain this action, must show herself entitled to a legal estate in the premises in dispute; and that if she has no more than an equitable estate, she cannot maintain this action.

2d, that if the jury believe, from the evidence, that *Nathaniel Kimball* was formerly the owner of the lot in dispute, and being such owner mortgaged the same, and afterwards married said plaintiff and died, the mortgage still unsatisfied, in that case the said plaintiff, as the widow of *Nathaniel Kimball*, is entitled to dower only in the equity of redemption of said lot, and cannot recover possession of said lot against a holder of the same under said mortgage, unless said lot shall have been previously redeemed: which the Court refused to give; but instructed the jury, that the legal title to all real estate remains in the mortgagor until entry by the mortgagee, and that the right of the widow of the mortgagor to dower cannot be defeated by a sale of the mortgaged premises of her deceased husband, whether the mortgage be made prior or subsequent to the marriage.

3d, that if the jury find a forfeiture of any of the conditions of the mortgage, prior to the marriage of the plaintiff to said *Nathaniel Kimball*, all the right which said *Kimball* or his heirs had to said lot was an equity of redemption; and that, consequently, the plaintiff could have no greater right; and that an equity of redemption was not such a title as would enable the plaintiff to recover in this action.

4th, that if they should find that previous to the marriage of the plaintiff to *Nathaniel Kimball*, he, *Nathaniel Kimball*, had by mortgage duly executed and recorded, conveyed the said

premises to said *Haggarty* and *Austin*, and that a forfeiture of the mortgage or any part thereof had taken place,—the legal estate in said mortgage had thereby been divested out of the said *Kimball* and vested in the mortgagees, the said *Haggarty* and *Austin*, and their assignee the said *John M'Mahan*.

5th, that to entitle the plaintiff to recover in this case, they must find that she is vested with the legal estate in the premises, or that her husband was entitled at some time during the coverture, or that he was vested with an equitable title thereto, not subject to any defeasance.

6th, that if the jury find that the estate of the husband was subject to a defeasance by mortgage or otherwise, which occurred previous to the marriage, the wife takes the said estate subject to such lien, defeasance, or mortgage, which would bar the estate of the husband.

7th, that if they find that the said *Haggarty* and *Austin*, or *Nathaniel Kimball*, the infant son and heir of the said *Nathaniel Kimball*, deceased, were not duly notified of said proceeding assigning dower, and not made parties to the record, they or either of them are not concluded thereby, and they are at full liberty to contest the same in this suit.

8th, that if they find that the estate of the husband was subject to a defeasance or lien, accruing previous to the time of the marriage, whereby the same would be liable to be defeated or barred, the wife marrying under such circumstances takes the estate subject to such defeasance or lien, and is subject to be barred thereby in like manner.

9th, that to entitle the plaintiff to recover in this case, they must find that her husband at some time during the coverture, was vested with a legal estate in the premises, or an equitable interest therein not subject to a defeasance.

10th, that after the happening of the forfeiture upon the said mortgage in *November*, 1827, the interest of the said *Kimball*, the mortgagor, was completely thereby divested, and he could not become re-invested therewith, until he should have paid the amount of the said forfeited money, and saved the equity of redemption in said lot; and that the said plaintiff cannot entitle herself to any part or interest therein, until she shall have contributed her proportion of one-third of such forfeited sum.

11th, that if the jury find that the plaintiff has any interest at all in the premises in dispute, it cannot be the subject of a suit at law, but only of a proceeding in equity.

12th, that the proceeding assigning dower is a summary proceeding authorised by statute, and confers no legal right to the complainant.

13th, that if they find the husband was not possessed of such an interest in the premises as would have been sufficient to have maintained an action of ejectment or disseisin, the wife deriving her claim of dower through her husband, cannot sustain this action.

The Court gave the 1st, 9th, and 13th instructions, and the charge following the 2d; and refused the 2d, 3d, 4th, 5th, 6th, 7th, 8th, 10th, 11th, and 12th. To which decision the defendant excepted.

The action of disseisin is given by the act of 1824, and appears to have been intended as a substitute for the action of ejectment. It is more summary and without the fiction of the action of ejectment, but rests the plaintiff's recovery as in that action upon a legal title (1). Many interesting and important questions arising from the testimony offered, the instructions asked and refused to be given, and the construction of the statute relative to dower, are before us. Some of these questions assume additional interest, not only from the fact of their being for the first time before this Court, and of a conflict in their settlement between the Courts of some of our sister states, and of those of *England*, but from their possessing an intrinsic weight which must be sensibly felt in its action upon a large body of property. The claim of the appellee is of dower, and it is contended in support of the claim, that the provisions of the statute of 1824, relative to dower, give it in estates in which it was denied by the common law. If this construction be correct, it is obvious that an important change has been made in a branch of the law which has received the utmost consideration, and which, in its general bearing in civilized life, is felt in its most varied interests. It is therefore our duty to examine if this construction be correct, and to what extent the legislature intended its enactment should reach. In doing this, it would seem proper before we examine the statute, to advert to the common law, the broad foundation of our statutory provisions. Dower, at common law, is thus defined:—"when a

man is seised of an estate of inheritance and dies in the life time of his wife, she is entitled to be endowed, for her natural life, of the third part of all the lands whereof her husband was seised, either in deed or in law, at any time during the coverture, and of which any issue which she might have had might by possibility have been heir." 4 Kent's Comm. 35.—2 Bl. Comm. 129 (2). The various branches of this definition are explained by these authors in their accustomed lucid manner, and are the subjects of adjudications, all tending to unfold and impress upon it that which is so necessary in the administration of law, certainty and conformity to policy and reason. Our attention will be directed to such parts only of the definition as appear strictly applicable to the case before us.

The right to dower is viewed with peculiar favour by Courts both of law and equity, and is regarded not only as a legal and equitable right, but as a moral right. But although it is thus recommended to the protection and favour of Courts, it would seem inconsistent with the principles of law that this protection and favour should be shown to the disregard and prejudice of the rights of others. The regard thus shown is not exclusive. It is qualified by the conflicting interests of others to which it is properly subject. Infants are also the peculiar care of Courts. But in extending that care, as in the protection of dower, it is manifest that no Court, under the responsibility of its guardianship, can wrongfully strip one class of litigants to provide for the wants and necessities of another. There are particular estates upon which the right of dower attaches. When that right has once attached to a legitimate subject, it can be divested neither by the act of the husband nor by the act of a third person. It can only be waived or transferred by the party in whom it exists. The right to dower is derivative. It is based on the marriage, and, as its incident, attaches itself to the estate of the husband. It cannot strike from an estate pre-existing rights and liens, or hold subject to its enjoyment the vested rights of others; nor can it enlarge the estate to which the husband himself was entitled. It is palpable, in the abstract, as well as in the operation of a particular rule, that a right derived cannot transcend the limits of its source, or encircle itself with powers and attributes that did not pertain to its source.

With these general positions, deducible from the books, we will return to the examination of the common law, and

present some of the doctrine on this subject. The wife was entitled to dower when her husband died seised, either in deed or in law, of an estate of inheritance, &c. She was therefore entitled to dower of lands of which the husband died seised in fee-simple or fee tail. The husband must further be seised of a freehold in possession, and of an estate of immediate inheritance in remainder or reversion; and the freehold and inheritance must be consolidated and be in the husband *simul et semel* during the marriage, to render the wife dowable. 4 Kent's Comm. 39. The seisin required must be accompanied by a beneficial interest. The seisin for an instant is not sufficient. In the commentaries of *Kent* and *Blackstone* are cases in illustration of the rule,—as, "when the same act that gives the estate to the husband conveys it out of him, as in the case of a conusee of a fine;" "when the husband takes a conveyance in fee, and at the same time mortgages the land back to the grantor, or to a third person, to secure the purchase-money in whole or in part." In these cases the wife is not entitled to dower. 4 Kent's Comm. 38.—2 Bl. Comm. 131. Nor does dower attach to the wife of a vendee, the purchase-money not being paid, nor the vendor's lien discharged. Sugd. on Vend. 352.—6 Ves. Jr. 95.—1 Johns. Ch. R. 308. Nor would it attach on a conveyance, common with us and substituted for the conveyance by fine, which occurs when a man and his wife make a conveyance to a third person of land belonging to the wife, with the view by an immediate re-conveyance to the husband to vest in him the fee-simple.

The wife of a trustee is not entitled to dower in the trust estate, any further than the husband had a beneficial interest therein; nor is the wife of a *cestui que trust* dowable in an estate, to which her husband had only an equitable and not a legal title during the coverture. Nor is a widow dowable of an equity of redemption. 4 Kent's Comm. 43.—2 Pow. on Mort. 688. The same rule, says Chancellor *Kent*, prevails as to an equity of redemption in an estate mortgaged in fee by the husband before his marriage, and not redeemed at his death. In the case of *Banks* v. *Sutton*, 2 P. Wms. 719, Sir *Joseph Jekyll*, the master of the rolls, in an elaborate opinion, laid down a different rule in relation to the right of dower in an equity of redemption, but succeeding chancellors, Lords *Thurlow* and *Redesdale*, and their successors, have shown the fallacy of the

arguments upon which that decision was bottomed, and for more than a century it has not been regarded as the law of England. In *Curtis* v. *Curtis,* 2 Ves. Jr. 124,—*Williams* v. *Lambe,* 3 Bro. C. C. 263, and in *D'Arcy* v. *Blake,* 2 Sch. & Lef. 388, the doctrine is successively holden, that the widow cannot have her dower out of any estate in which her husband had not the legal fee; that it is a mere legal demand; and that equity ought not to create the right where it does not subsist at law. And Lord *Thurlow* remarked, in the second case cited, "that if it turned out that the mortgage being in fee was made before marriage, there would be an end of the widow's claim of dower." These decisions sustain the doctrine in the commentaries cited, and are accordant with the text in 2 Pow. on Mort. 700.

If then, agreeably to the common law, a widow be not dowable of an equity of redemption, or of an estate mortgaged in fee by the husband before marriage, and not redeemed at his death,—that the right of dower does not enlarge or change the quality of the estate of which it is claimed, nor interfere with the vested rights of others,—it is obvious that, to enable the plaintiff to recover in this action, the statute must have changed not only the common law in giving to a widow dower in an equity of redemption, but have also converted an equitable into a legal estate.

Recurring to the testimony, it appears that *Nathaniel Kimball,* nearly a year before his marriage to the appellee, being seised in fee-simple of a lot of ground, executed a mortgage for the same to *Haggarty* and *Austin;* and that prior to his marriage a forfeiture of the condition of the mortgage took place, by the non-payment of 1,000 dollars, one of the instalments stipulated to be paid; that prior to the death of *Kimball* a second instalment became due; and that neither of the instalments was paid at the time of his death; that the mortgagees, after his death, filed a bill of foreclosure, and that by an agreement between them and the guardian of the heir and the personal representatives of said *Kimball,* a decree of foreclosure was rendered and the land offered for sale; that not selling for the mortgage-money, interest, and costs, it was conveyed to the mortgagees by a commissioner appointed by the Court, and subsequently conveyed to the appellant, who was immediately put into possession of the same.

2

By the *English* law, in a case such as the present, the widow would not be entitled to dower. If she enjoys that right here, it must be by virtue of the statute. It reads as follows: "The widow of any person dying intestate or otherwise, shall be endowed of one full and equal third part of all the lands, tenements, and hereditaments, either legal or equitable, whereof her husband or any other person to his use was seised at any time during the coverture; and the dower of such widow shall not be considered as sold or extinguished by a sale of her husband's property, by virtue of any decree, execution, or mortgage"(3).

The statute certainly changes the common law, but not to the extent we think contended for by the counsel for the appellee. A widow, by the statute, is entitled to dower of the land, &c., either legal or equitable, whereof her husband or any other person to his use was seised at any time during the coverture. She is thus entitled to dower of an equitable and trust estate, the beneficial interest in which belonged to her husband. No other change, conflicting with the rules of the common law to which we have adverted, appears to have been made. The right is given, but it was intended to have been given, and must be so regarded, as subject to all incumbrances and liens previously existing. This appears to be the only reasonable construction of which the statute is susceptible. The latter clause "and the dower of such widow shall not be considered as sold or extinguished by a sale of her husband's property, by virtue of any decree, execution, or mortgage," relates to the protection of her right when it has attached as a present and existing right. It cannot add to the right by relation back to a period, when the estate in which it was claimed was without incumbrance (4). In this there is no departure from the common law; and were we to say that the legislature intended otherwise, we should ascribe to it the exercise of a power denied by the constitution. As was well remarked by the counsel for the appellant, the act has not provided that the widow of *A.* shall be endowed of the property of *B.*

The appellee was, by virtue of this act, dowable of an equitable and trust estate, of which her husband or any other person to his use, was seised at any time during the coverture. In prosecuting the inquiry it may here be asked, what estate in the lot had *Nathaniel Kimball* during the coverture? for,

May Term,
1832.

M'MAHAN
v.
KIMBALL.

reiterating a former position, it is demonstrable that the interest of his widow is limited to that which he himself enjoyed. By his deed of mortgage, he had conveyed all his right and title to *Haggarty* and *Austin*, subject to the condition in the mortgage. He thus divested himself of the legal title, and was left with no other interest than an equity of redemption. Of this he was possessed at the time of his marriage to the appellee, and during the period of coverture. The appellee then can only be entitled to dower in an equity of redemption. The construction we have given the statute, is accordant to that given to a similar statute in *Virginia*. *Claiborne* v. *Henderson*, 3 Hen. & Munf. 322;—2 Tuck. Black. 128, 131, and notes;—*Heth* v. *Cocke*, 1 Rand. Rep. 344. In the latter case it was decided, that a widow is not entitled to dower of real estate mortgaged by the husband before marriage; but that she was entitled to be endowed of the equity of redemption.

In the several states of the Union, as remarked, there is a conflict in their adjudications upon this subject. But it must be observed, that in those states in which dower is allowed to the widow in an equity of redemption, it is subject to the qualifications to which we have adverted, and which we regard as applicable to the case before us. Thus in *New-York*, in *Coates* v. *Cheever*, 1 Cow. R. 460, it is said, "that though a widow is in general entitled to dower in that state in an equity of redemption, yet when the tenant enters upon the land by virtue of a foreclosure, or after a forfeiture for the non-payment of the money, then the estate is deemed never to have vested in the husband, and the widow is not entitled to dower. In *South-Carolina* and *Massachusetts*, a widow is not entitled to dower of lands mortgaged before the marriage, until she has redeemed the mortgage. *Crafts* v. *Crafts*, 2 M'Cord's Rep. 54.—*Bolton* v. *Ballard*, 13 Mass. Rep. 227; nor unless redeemed by the husband in his life-time, or by his representatives and herself after his death. *Hildreth* v. *Jones*, 13 Mass. Rep. 525.—*Gibson* v. *Crehore*, 5 Pick. Rep. 146. In *Pennsylvania*, the widow is dowable of land mortgaged before marriage, but the right is subject to the mortgage. 2 Serg. & R. 554. In *New-Jersey*, dower cannot be claimed of land mortgaged before marriage. 1 South. R. 260. The right of redemption exists not only in the mortgagor, but in his heirs and personal representatives, and every other person who has an interest in or an equitable

May Term, 1832.

M'MAHAN
v.
KIMBALL.

lien upon the lands, &c. But the redemption must be of the entire mortgage and not by parcels. He who redeems must pay the whole debt, and he will then stand in the place of the party whose interest in the estate he discharges. 4 Kent's Comm. 162.

Regarding then the statute as extending the right of dower to an equitable or trust estate, we think the appellee was entitled to dower in the equity of redemption, at the time of the death of *Nathaniel Kimball;* that this right was subject to the pre-existing rights of *Haggarty* and *Austin,* the mortgagees; that the mortgage not being discharged by *Nathaniel Kimball* in his life-time, nor by his heirs or representatives since his death, and the assignee of the mortgagees being in possession of the lot, by virtue of a deed in fee-simple executed to him by the mortgagees, to whom the commissioner of the Circuit Court of *Washington* county, appointed to sell and convey on a foreclosure of the mortgage, had executed a deed,—the appellee's right of dower in the equity of redemption by such foreclosure, has been barred (5).

It would appear to have been contended, that error had intervened in the several proceedings of record, forming a part of the evidence submitted to the jury in this case. Whether the mortgagees should have been parties to the application by the widow to the Circuit Court, for the appointment of a commissioner to assign or set over to her dower; or whether the Circuit Court, on the motion by *Haggarty* and *Austin* to set aside the report of said commissioner for the reasons they assigned, committed error, are questions which it is not thought are properly before us for decision. Nor can we thus, collaterally, decide upon questions presented in relation to the bill filed by *Haggarty* and *Austin* to foreclose the mortgage. Another question arises, is the title of the appellee legal or equitable? If equitable, should she not have resorted to a Court of equity? The reasoning by which we have been brought to the conclusion, that by the statute the appellee is entitled to dower in the equity of redemption, appears to establish the right to be equitable, and as such appropriate to a Court of equity. The cases of *D'Arcy* v. *Blake,* 2 Sch. & Lef. 388, and *Taylor* v. *M'Cracken* in this Court, are decisive of this question. It would also seem to have been contended, that the assignment of dower changed in some degree the character of the appellee's claim.

The title, however, is not changed by the assignment of dower. The assignment limits the extent of dower, but does not confer a legal right. *Coates* v. *Cheevers*, 1 Cow. R. 478.

*Per Curiam.*—The judgment is reversed, and the verdict set aside, with costs. Cause remanded, &c.

*J. H. Farnham*, for the appellant.

*J. H. Thompson* and *J. Naylor*, for the appellee.

(1) Rev. Code, 1824, p. 55. Accord. Rev. Code, 1831, p. 211.

(2) If the issue of the wife cannot inherit, she is not entitled to dower; as where the husband is seised of an estate to him and *the heirs of his body by a former wife*, his second wife has no right to dower. 2 Will. Saunders, 45, note (5). So, the wife of a joint-tenant in fee is not entitled to dower, because the estate upon his death does not descend to his heir, but survives. Ib. But these cases have no application in *Indiana*. We have no estates' tail; Rev. Code, 1831, p. 209; and a joint-tenant's estate is subject to dower. Ib. 290.

(3) Rev. Code, 1824, p. 157. Accord. Rev. Code, 1831, p. 209.

(4) A sale of real estate under a judgment obtained against a husband before his marriage, will overreach the marriage so as to divest the right of dower of the wife. *Sanford* v. *M'Lean*, 3 Paige, 117.

(5) In *England*, the law respecting dower has been greatly changed since the decision in the text. The wife is now in that country, by a statute enacted in 1833, entitled to dower in an *equitable* estate; and seisin of the husband is not, either in fact or in law, necessary to her right of dower. But she can no longer claim dower out of any lands, which have been disposed of by her husband in his life-time, or by his will; and all encumbrances on the land, created by her husband, are valid against her claim to dower. Stat. 3 and 4 Will. 4.—6 Legal Obs. 449.—2 Chitty's Gen. Prac. Supp. 63. Mr. *Sugden* says, that by this Dower Act, the wife's ancient right of dower is in effect taken away; and that it is inconsistent, whilst the husband is in every case enabled to defeat it, to extend the right of dower over equitable estates. Sugd. on Vend. 9th London edition, p. 366.

The effect of the *Indiana* statute relative to dower is, that if a man mortgage his land in fee before marriage,—if he purchase before or after marriage an equity of redemption on a mortgage in fee,—or if he and his wife execute a mortgage in fee of his lands,—the wife is entitled to dower, on her husband's death, in the lands mortgaged; but the dower is subject to the mortgage.

If the widow, in any of the cases just mentioned, recover against the heir of her husband, or against the purchaser from her husband, she takes as they take subject to the outstanding mortgage. She may file a bill to redeem against the mortgagee, but she then pays him the whole debt, and holds the whole estate until reimbursed the amount she has paid beyond her proportion. *Gibson* v. *Crehore*, 5 Pick. 146. So, also, she may recover her dower against any person who, having a right to redeem, has paid the mortgage-debt, provided she contribute her due proportion of the money thus paid according to her interest. *Swaine* v. *Perine*, 5 Johns. C. R. 482.—*Cass* v. *Martin*, 6 N. Hamp. 25.

If on a decree of foreclosure and sale against the mortgagor, in any of those cases, the premises sell for more than sufficient to pay the mortgage-debt, and

May Term,
·1832.

the sale take place after the mortgagor's death,—his widow being dowable of the equity of redemption is entitled to dower in the surplus; which surplus represents the equity of redemption. *Titus* v. *Neilson*, 5 Johns. C. R. 452. *Quære*, whether the widow, in the case in the text, as she had a right to redeem the mortgage, ought not to have been a party defendant to the bill of foreclosure? Vide *Heth* v. *Cocke et ux.* 1 Rand. 344.