RICHARDSON &
LETCHER
*vs*
BARTLEY *et al.*

---

TROVER.

*Case* 110.

May 7.

# Richardson & Letcher *vs* Bartley *et al.*

APPEAL FROM THE GREENUP CIRCUIT.

*Execution.    Delivery bond.    Sheriff.    Lien.*

JUDGE EWING delivered the Opinion of the Court—the Chief Justice did not sit in this case.

The case stated,
and judgment of
the Circuit Court

TWENTY-TWO executions issued from the Clerk's office of the Greenup Circuit Court, on recognizances having the force of replevin bonds, in favor of different creditors against John and David Trimble and John T. Woodrow, indorsed "no security of any kind to be taken," and were placed in the hands of R. M. Briggs, D. S. for James Bartley, Sheriff of Greenup county, in October, 1839, returnable to the December rules following. These executions, while in full force, were all levied on the real and personal estate of John and David Trimble, and John T. Woodrow, on the 12th December, and the personal estate left in their custody. On the 23d December

RICHARDSON &
LETCHER.
vs
BARTLEY et al.

the deputy took from them bonds with security, in the form of forthcoming bonds, for the delivery of the property on the day of sale. The deputy returned the executions to the office with a return that he had levied them, and a specification of the property levied on attached, "all of which remained in his hands unsold," upon which twenty-two writs of *venditioni exponas* issued on the 9th January, 1840, by virtue of which the defendants, the Sheriff and his deputies, took possession of the property levied on, and sold the same in satisfaction of the executions. David and John Trimble after the levy, to-wit, on the 30th December, 1839, transferred to Richardson & Letcher, as trustees for themselves and other creditors, the whole of the property levied on, and they instituted this action, it being an action of trover and conversion, for the personal property so levied on and sold, and having failed in the Court below have appealed to this Court.

They insist, that by leaving the property in the hands of the defendants in the executions and taking the bonds, it was released from the levy, and was lawfully transferred to them, and that or any other property of the defendants could not be taken and sold, except upon new executions issuing on the forthcoming bonds or the recognizances; and this presents the main question for the consideration of this Court.

Grounds relied on for reversal.

We may concede that when an officer may *lawfully take a statutory* forthcoming bond, that by taking the same the property is discharged from the levy, and if not delivered cannot be retaken by the officer, except upon new process issuing upon the forthcoming bond, because this is the mode provided by the statute for making the debt, and no other perhaps can be rightfully pursued. And in such a state of case, the bond being forfeited, &c. the defendants and their sureties being both liable to the new process, might perhaps be at liberty to dispose of the property levied on as well as any other property, at any time before the new execution was placed in the hands of the officer. But if this be true, which is not necessary now to be decided, and which we do not decide, the executions being endorsed "that no security

Wherever a Sheriff may rightfully take a forthcoming bond and does so, the property levied on is released, and cannot be retaken without a new execution on the forthcoming bond—*argu.*

Where an execution is endorsed that "no security of any

RICHARDSON &
LETCHER
vs
BARTLEY et al.

kind is to be ta-
ken" the offi-
cer has no right
to take a deliv-
ery bond, and if
taken it cannot
be made the ba-
sis of an execu-
tion.

of any kind is to be taken," the officer had no right to take a *statutory* bond, and if taken, it could not be returned and made the basis of an execution. If taken in such a case it could only be taken for his own indemnity and treated as a common law bond, for which purpose he insists it was taken in this case. To allow it to be treated as a *statutory bond*, notwithstanding the indorsement, would be to lay down a rule by which there might be no end to the execution, as the indorsement required to be made on an execution issuing on a forthcoming bond, is precisely the same as that required to be indorsed on an execution issuing on a recognizance or replevin bond; and if, in the latter case, he might take a statutory forthcoming bond upon which a new execution must issue, so he might, notwithstanding the indorsement, take a new bond from time to time in the former case, and upon which new process must be issued.

The 14th sec. of
the act of 1828,
Stat. Law, 641,
construed.

The 14th sec. of the act of 1828, *Stat. Laws*, 1*st*, 641, which provides for taking forthcoming bonds, looks to the *prior* provisions of the statute, and was intended to provide for such bonds on executions issuing on *original judgments* only, such executions having been provided for in the previous sections, and must be so construed to make it stand consistently with the subsequent and 16th sec. which authorizes a replevin, and provides for an indorsement on the execution that "no security of *any kind* is to be taken."

Also the statute
of 1821, Stat.
Law, 508.

Nor do we find any thing in the previous statutes on this subject to lead us to a different conclusion as to the *effect* of the indorsement required in this act. The provisions of the statute of 1821, 1 *Dig. of the Stat.* 508, were intended to coerce from the creditor an indorsement upon his execution, that Commonwealth's paper would be received, and were temporary in their operation, and were not made to apply to any case where the required indorsement for paper was made; they are superseded by the statute of 1828, which required no such indorsement upon subsequent judgments, or on executions issuing under its provisions as well as by the termination of the charter of the Commonwealth's Bank

and a withdrawal of its paper from circulation, and an entire change in the policy of the country.

But in cases where the indorsement is made as well as any other, we cannot doubt that the officer may, at his own wish, entrust the care and keeping of the property levied on to others, and if he chooses to risk it he may entrust it to the defendants in the execution—in either case they are his *mere bailees* and *keepers* of the property, and their possession is his possession: *Bl. Com.* 2, 396; 2 *Saund.* 47 *a note*, &c. He has by virtue of the levy a special property in the goods, by reason of his responsibility to the plaintiff for their value, and may sue for them in trespass or trover: 2 *Saund.* 46, *Wilberham* vs *Snow*, and the notes. His taking a bond for his own indemnity cannot render his condition worse, or change his relation to his bailees or his rights over the property. If he have a special property in the goods and may sue for them, he may also, with or without a *venditioni exponas*, take possession and sell them without being subject to an action.

It is said in 2 *Saund.* 47, *note c,* founded upon the case of *Blades* vs *Arundle*, 1 *M. & S.* 711, that a Sheriff must *continue in possession* of goods levied on in order to maintain an action against a person taking them. If this were true, to the full extent, the possession of his mere naked bailees, with whom he has placed the property for safe keeping, must be regarded as his possession, so far as to authorize the action at least against a wrong doer, and it would be against his bailees upon the bailment. But the case referred to does not sustain the principle assumed, or in any wise impair the officer's right of action in the case before the Court. In that case the officer seized a table in the name of all the goods in the house and locked up his warrant in the table drawer and left the house, it was held that the *possession* was *abandoned* by the Sheriff, and that no action lay by him against the landlord, who afterwards distrained the goods. Then the *possession* of the goods was regarded as *abandoned*, and the circumstances were such as to have well justified that conclusion. But here the officer, so far from *abandoning* the possession of the goods, has committed their

RICHARDSON & LETCHER
vs
BARTLEY et al.

A Sheriff having an execution and levying it on personal property, is vested with a special property, and he may commit the safe keeping thereof to any agent he may select, the defendant in the execution as well as any other, and take bond for its faithful surrender, and the possession of such agent is his possession, and he may resume it at pleasure, and the bond is obligatory between them as a common law bond.

RICHARDSON &
LETCHER
vs
BARTLEY et al..

safe keeping to others, not only under a promise to have them forthcoming at the sale, but with a bond with sureties to do so.

· To determine that his acts in this case amounted to an *abandonment* of the possession, or operated to *release* the property from the levy, would be to give that construction to his acts which is contradicted by the character of the arrangement and the manifest object and intention of the parties.

But if it were conceded that the officer could not maintain an action for the goods, it does not follow that he would be *subject to an action,* and especially the action of trover and conversion, for *peaceably seizing* the goods, they still remaining in the hands of his *bailees,* and selling them in satisfaction of the executions levied on them.

The rightful owner of property may take the. possession of his property wherever he can find it, provided he can do so without force or terror— so a sheriff, by virtue of his special property acquired by the levy, may take, peaceably, and sell property levied on, and especially from the custody of his bailees, where he has placed them, without legal responsibility.

The rightful owner of property *may retake* wherever he can find it, provided he can regain the possession without force or terror: (3 *Black.* 4.) If so, it would seem that the sheriff, who is responsible to the plaintiff for the full value of the goods levied on, and has acquired, by the levy, a special property in the goods, should have the right to *retake* the goods wherever he might find them, provided he can do so without force or terror, for the purpose of selling them and applying the proceeds as contemplated by the levy. If so, much more may he retake them from the bailees to whom he entrusted them, for the same objects, and especially if he can do so without force. And the force and wrong in taking, if there were any in this case, is waived by the form of the action. Having retaken them, we cannot doubt that his right to sell was complete, and formed a full justification against the charge of conversion averred in the plaintiff's declaration.

It has been repeatedly determined by this Court and others, that if property levied on be left in the possession of the defendant, it may be evidence of fraud, deriving force from the length of time it is permitted to remain. From these decisions it may be assumed as conceded, that the fact of leaving the property levied on with the defendants, did not release it from the levy. If it had

been released, the question of fraud could not have arisen or been necessary to be decided, as it could only have arisen in a controversy between the officer or plaintiff in the execution and a third person, claiming the property as creditor or purchaser, and the release would have been decisive in favor of the latter, without raising the question of fraud.

Indeed, the cumbrous nature of property levied on, is often such, that it could not be removed but at great expense, and that is the nature of part of the property levied on in this case. To lay down the rule that would prevent the officer from leaving the property in the care of the defendant, if he could trust him, with or without bond and security, would be to establish a rule that would not only subject the defendant to heavy additional costs, in many instances, put the officer to unnecessary perplexity and trouble. We cannot yield our assent to such a rule. And the circumstances under which the property, in the case before us, was left with the defendants in execution, being such as to leave no ground for the presumption of fraud, we are clear that the appellants had no good cause of action.

But it is objected that the Court erred in not permitting John and David Trimble, and John T. Woodrow, who were offered as witnesses for the plaintiffs, to give evidence in the cause. David Trimble was examined on his *voir dire*, and stated that the property was sold under the executions at a great sacrifice, and if the plaintiffs recovered, they were entitled to recover a much larger amount than it sold for. Upon this statement he was offered to be sworn in chief, and being objected to, the objection was sustained by the Court. And it being admitted that John Trimble and John T. Woodrow stood in the same attitude, they were also rejected as witnesses. The plaintiffs then *offered*, in open Court, to waive any recovery in the suit for a greater amount than the property had sold for under the executions, and only claimed a verdict for the amount the sheriff had received, and again offered said witnesses; and the Court still refused to permit them to testify.

RICHARDSON & LETCHER
*vs*
BARTLEY *et al.*

The Court will not lay down any rule preventing sheriffs from leaving property levied on in the care of a defendant, if the officer choose to trust him.

A witness whose debt would be extinguished by a recovery in the suit, is not a competent witness for plaintiff.

The witnesses, when first offered, were unquestionably interested on the side of the plaintiffs. If they recovered they were entitled to recover the *value* of the property taken, at the time of the conversion, which, according to the statement of Trimble, greatly exceeded the amount for which it was sold under execution. The amount so recovered, would be applicable to, and satisfy so much of the witnesses debt to the plaintiffs and their *cestui que trusts*, by which the witnesses would be discharged to that extent, from their liabilities. And the defendants having paid over the money made, to the plaintiffs in the executions, as is to be presumed, could not recover it back from them, they in no respect having participated in the wrong charged. If, therefore, they could recover it at all, they could only recover it from the witnesses, the defendants in the executions, as so much money paid to their use, and could not, in the recovery, exceed the amount so paid, which amount falls short of the amount of their liabilities extinguished by the recovery of the plaintiffs. If the defendants could not recover from the witnesses upon the ground that they had been guilty of a trespass, in the seizure of the property, then would their interest be still greater, as both their debts to the plaintiffs in the execution and their debts to the plaintiffs in this action would be paid by the same property, and they would be discharged from responsibility to both to the extent of the payment, without being liable to the sheriff or any other for any part of the amount. Nor can we say that the Court erred in refusing to receive the *offer* of the plaintiffs, or in still rejecting the witnesses notwithstanding the *offer* of the plaintiffs to waive any recovery in the suit for the excess over the amount for which the property sold. If the sheriff could not recover from the witnesses for the money paid on the executions, the *offer* to release the excess; if the *offer* had been carried into effect by an actual release, would not, for the reason before stated, have rendered their interests equal.

But the Court was not bound to make terms with the plaintiffs or their counsel, nor to receive and act upon a *parol offer* or *promise* to waive a recovery for a part, though made in open Court, upon the condition that the Court

would admit the witness to be sworn. Being interested before and clearly incompetent, nothing less than a *release* or a dismissal of the suit for the excess, or at least an entry upon the record, waiving all right to recover the same, could have rendered them competent or constrained the Court to admit them as such.

Moreover, the witnesses, at the time when it was seized, had the actual possession of the property, and by the express terms of the deed of trust, had the right reserved to them to retain the possession. If, therefore, the plaintiffs could maintain the action of trover for the property at all, which is not admitted, it would seem proper, perhaps, that they should be restored to the possession and use of the amount recovered upon the like terms, and for the like purposes, as they were entitled to the possession of the property. In which case they would be directly interested in favor of the recovery.

Upon the whole, we think the judgment of the Circuit Court should be affirmed with costs.

*Hord and Owsley* for plaintiffs; *Morehead & Reed, Apperson and Beatty* for defendants.

witness, the offer should be carried out by release, &c. or this Court will not interfere.