NINIAN W. EDWARDS, appellant, v. NATHANIEL POPE et al., appellees.

*Appeal from Madison.*

Where an injunction to stay a sale of town lots, which were advertised for sale, was granted, and the defendant answered the bill, denying its equity, and stating that considerable expense had been incurred, by advertising the lots for sale, which would be a loss in consequence of the injunction, the Court, on dissolving the injunction, decreed that the complainant should pay the amount of said expenses, which were reported by the master, at $22: *Held*, that the decree was not erroneous.

Contemporaneous and uniform construction assists in the sound interpretation of constitutions and laws.

The legislature may exercise its legitimate powers by enacting either general or special laws.

The legislature has no power to enquire into, ascertain, or determine whether a widow is entitled to dower in a tract of land; and an act authorizing and requiring certain commissioners to assign to her her dower in certain premises, is null and void, so far as it is a determination that she is entitled to dower therein, it being a judicial determination.

A statute is void only so far as its provisions are repugnant to the Constitution.

The preamble of a statute is no part of the act; still it may assist in ascertaining the true intent and meaning of the legislature.

Private acts are construed in the same manner as conveyances that derive their effect from the common law; and the court will consider what was the object and intention of the parties in obtaining the act.

Where the legislature passed a special act, the preamble of which recited, that divers persons, some known and others unknown, some residents and others non-residents, were owners of a certain tract of land, and that a partition thereof would be extremely difficult, if not impracticable, and the act authorized any one interested to petition the Circuit Court of the proper county, in behalf of themselves, and all others interested, without naming them, for the sale of said land, and authorized the Court, on due proof of the publication of notice of the presentation of said petition, as required in the act, and upon its appearing that a partition of said land would be extremely difficult, if not impracticable, to order the sale of the same, and appoint three disinterested householders of the said county to lay off the same into town lots and streets, and to sell the lots on a credit, and on payment of the purchase money, to make deeds to the purchasers, which deeds were declared to be valid and effectual, to pass to the purchasers respectively, or their assigns, an estate in fee simple to the premises purchased; and the act further provided, that the streets should be and forever remain free, public, and common highways and streets: *Held*, that the act was constitutional.

The constitutionality of each special act of the legislature must depend upon its own particular phraseology and provisions. The particular circumstances of the parties applying for, and to be affected by it, must be looked to, as well as their intention, and the intention of the legislature, and the object to be accomplished; and if, from these, it be manifest that the legislature has exercised but a remedial power, in enabling parties to do with their own property what they had not power before to do, and has not adjudicated that they should do what they are unwilling to do, the act would be within legislative competency.

THIS cause was heard in the Court below, at the August term, 1839, before the Hon. Sidney Breese. The complainant appealed to this Court.

S. T. LOGAN and E. D. BAKER, for the appellant.

D. J. BAKER, A. W. JONES, and N. D. STRONG, for the appellees.

SCATES, Justice, delivered the opinion of the Court:
The appellant filed his *bill in chancery*, stating that his father,

being seized of an undivided fifth part of a certain tract of land set forth, and of certain lots in the city of Alton, devised the same to him and others, who were his heirs at law; that the said premises have never been divided, though they are divisible; that on the application of Nathaniel Pope, the General Assembly of Illinois, at a special session in July, 1837, (1) after reciting that said lands and lots were owned by said Pope, John Reynolds, the heirs of Wm. B. Whitesides, the heirs of Ninian Edwards, and others, and that a division was difficult, enacted that one or more of those interested jointly, or in common, might petition the Madison Circuit Court, on behalf of themselves and all others interested, without naming them, for a sale of said lands, and if it should appear to the Court, after due notice given, that partition would be extremely difficult, if not impracticable, the Court should order a sale, and appoint three commissioners to sell the same, on a credit, on the premises, before the next term of said Court. Said commissioners were required by said act, to subdivide said tract of land into town lots and streets, declaring that said streets should forever be and remain public highways. Upon payment of the purchase money, said commissioners were to make deeds, which were declared valid and effectual to pass an estate in fee simple, free from the right or claim of all persons interested as joint tenants, or tenants in common. The bill further charges, that at the August term of the Madison Circuit Court, 1838, upon petition of Nathaniel Pope, for a sale, J. B. Hundly, N. Buckmaster, and S. W. Robbins were appointed commissioners to sell said land and lots, and to perform the duties specified in said act; who failed to sell before the next term of said Court.

That upon further application, the General Assembly of Illinois passed another special act, by which, amongst other things, it was enacted, that said commissioners should be authorized and required to set apart and assign, according to law, to Abial Easton, her dower in and to said lands and lots; and that they should sell the reversionary interest in said dower, lands, and lots; and that said sales should be made after due notice given. That said commissioners have laid off said land into lots and streets, and recorded a plat thereof; and have assigned to Abial Easton certain lots as her dower. That they have advertised said lots for sale, part absolutely, and part subject to said dower.

Said notice and special acts are made parts of the bill, as well as the proceedings of the Court on Pope's petition.

The bill charges that these acts of the legislature are unconstitutional and void; because it is an attempt of the legislature to exercise judicial authority, assuming control over private property, in individual cases, without the consent of the owners; because it is an assumption of judicial authority, to order dower to be set apart to Abial Easton, in those lands, by the commissioners, and to sell them

(1) Laws of July, 1837, 53.

subject to that dower; because the commissioners are directed to lay off streets, and the act declares them to be public highways, without compensation to the owners of the land ; because the legislature determines who are the owners of said land.

The bill charges that the lands are divisible, under the general laws now in force, or may be sold.

It also charges that Nathaniel Pope, John Reynolds, Moses Whitesides, Ninian E. Whitesides, and the other heirs of William B. Whitesides, deceased, and others unknown, and Joseph Conway are owners of undivided interests in said land.

The bill prays that all the owners, known and unknown, be made parties, and that upon the hearing, a perpetual injunction be granted, staying all further proceedings by said commissioners and others, under said act, unless it should appear, that all persons interested are capable of consenting, and do consent to such sale.

Nathaniel Pope answered : That he gave due notice of the presentation of his said petition, for eight weeks, in a newspaper in Madison county ; that at the August term, 1838, the Court ordered a sale of the lands and lots, in compliance with said special acts. He admits that the complainant is interested; that said special acts were passed ; and charges that the complainant was a member of the legislature, at the time said acts were passed, and took an active part in passing the first one. He further charges that complainant, defendant, and their co-tenants all derive title from Rufus Easton, whose wife Abial did not unite with him in the conveyance, and that she is the same Abial mentioned in the law. He denies that the property can be divided amongst the co-tenants without great injury; for the reason that its location is only suited for town lots, deriving most of its value therefrom ; and also on account of the number and uncertainty in name of those interested. He denies that commissioners appointed by the Court, under the general law for partition, could divide the land into town lots, and designate streets for the purpose of sale. He insists that the decree of the Court ordering the sale, precludes the complainant from questioning it in this way. He alleges that his petition was presented with the approbation of John Reynolds and others interested. He admits the appointment of commissioners; that they surveyed the land, and laid it off into lots and streets, and advertised it for sale. He charges that they incurred great expense ; prays a reference to a master to take an account thereof; that the injunction be dissolved ; the bill dismissed ; and for his costs and charges, and the expenses of the commissioners.

Buckmaster and Hundly answer, and admit their appointment, the survey, and division into lots, and advertising to sell; deny that they assigned dower to Abial Easton ; charge that they have incurred considerable expense; offer to exhibit an account thereof, and pray their costs.

It was agreed, between the parties, that Mrs. Easton did not re-

linquish her dower in the premises. That complainant was a member of the legislature at the time both laws passed; and that the notice set forth in the record was published according to the provisions of the special acts. The Court dissolved the injunction, dismissed the bill, and referred the account of expenses to a master for report. To his report exceptions were taken and sustained. The Court decreed the payment of the sum of $22, the balance reported, and the costs, to which no exception was taken.

The appellant assigns for error,

*First.* The dissolution of the injunction;

*Second.* The dismissal of the bill;

*Third.* The decree for $22, to defendants not before the Court.

The last assignment is not sustainable. The answers charged that considerable expense had been incurred, by advertising the lots for sale, which would be a loss to the petitioners, by the injunction restraining the sale, and that the lots must be advertised again. The decree embraces only the sum awarded by the master, upon the bill of items, which was not excepted to by the complainant. In equity and good conscience he ought to pay the expense of those services which were rendered useless by his own act, as damages necessarily sustained in consequence of this injunction.

The first and second errors assigned are in substance the same; as there was no ground for retaining the bill, after the dissolution of the injunction. The specific relief sought, and all that could be given, was a perpetual injunction upon the defendants, from further proceedings under the special acts of the legislature.

It is contended that the legislature had not the power exercised in this case, under the Constitution, because it was a judicial power, which was confided to another body of magistracy. The first section of the first article of the Constitution has divided the powers of the Government into three departments: the legislative to one, the judciial to another, and the executive to another; and the second section provides, that no person or collection of persons, being one of those departments, shall exercise any power properly belonging to either of the others. The legislative is confided to the General Assembly; the executive to the Governor; and the judicial to the Supreme and inferior courts. (1)

Section eight of the eighth article provides, that no freeman shall be disseized of his freehold, or in any manner deprived of his property, but by the judgment of his peers, or the law of the land. And the eleventh section of the same article provides, that no man's property shall be taken or applied to public use, without the consent of his representatives in the General Assembly, nor without just compensation being made to him. These are the several provisions of the Constitution which are supposed to be violated by these special acts, and the proceedings under them.

(1) Art. II., § 1; Art. III., § 1; Art. IV., § 1.

In the first place can the legislature pass a special law, for a particular case? It is contended that it cannot; that all laws must be of a general nature and operation, in relation to rights and property.

It will not be contended that the legislative department may not establish all such rules in relation to rights, property, the rules of descent, the power and modes of disposing of and securing such rights, and of evidence to establish them, that they may deem expedient, and needful for the public good, so that they take away from the citizen no rights which he possesses, or, if taken for the public use, that the consent of his representatives be first obtained, and a just compensation made. They may so change the law of descents as to cut off all our expectations of inheritance, and confer it upon a single child, and may deny the power of disposition by will, so as to prevent the bounty of our parents. They may so change the rules of evidence as to make it difficult to establish our rights. They may so limit the time of suit, as that, when elapsed, to deny us all remedy to enforce those rights; and yet, in all these cases, and the like, not violate that great fundamental law.

The power of the legislature is limited and restrained by the Constitution within the bounds prescribed by that instrument. It is not the mode of exercising the power, but the right, that is denied by the Constitution. If the thing to be done, the right to be secured, and the mode of securing that right, and doing the act, be within legislative competency, the manner of the legislative exercise of that power is not restrained by the Constitution. When I speak of the mode and manner, it is in reference to general or special legislation, and not of the readings of the bills in the several legislative departments, and their approval by the executive.

Although *Magna Carta* was not a paramount law to the power of Parliament, yet it contained a declaration of the great and fundamental rights of freemen, which Parliament would not violate, notwithstanding its omnipotence, according to Blackstone. (1) Parliament has, since the reign of Edward the First, before and since *Magna Carta*, passed private acts, upon the petition of individuals for relief in private affairs; and it has long since become one of the common assurances of title in the kingdom. (2) And we see that Parliament exercised this power under circumstances enabling a person to acquire an absolute title to realty, where, by the deeds, will, or settlements, he was only entitled to an estate-tail, but capable of being converted into a fee, by fine and recovery.

Thus we see, that the exercise of this power by Parliament was not confined to those cases in which the party had no relief under the general laws, but was exercised in those cases where, by the

(1) 2 Blac. Com. 345.  (2) 5 Cruise's Dig., title 33, p. 1; 2 Blac. Com. 345.

general laws, the same end could be accomplished. (1)   So they have passed acts for enclosing particular commons. (2)   But the mode of passing the act was much more cautious and circumspect than here.   All the parties in interest either presented the petition, or they expressly consented, and it was referred to two judges to hear the proofs, and draw a bill, which was again referred to a committee, and proofs heard. (3)   Consent was expressly required from all interested, unless perversely withheld; or if incapable of giving it, on account of infancy, lunacy, &c., an equivalent must be given them.

Nearly all the States have constitutions with provisions similar to our own.   Contemporaneous and uniform construction assists in the sound interpretation of constitutions and laws.   These may be found in the private acts upon the statute books of the several States.

I think that the legislature may, therefore, exercise its legitimate powers by enacting general or special laws.   Of the impolicy of special legislation, it is not the business of the Court to speak.

Again, it is objected to these acts, that it was a judicial power exercised in requiring the commissioners to assign to Mrs. Easton her dower.   The first section of the amendatory act, passed in 1838, (4) directs the commissioners, Buckmaster, Hundly, and Robbins, to set apart to her, her dower.   It appears to me as a determination, by the legislature, that she is entitled to dower, and, if so, it is a judicial determination, which is null and void.   The legislature has no power to enquire into, ascertain, and determine her rights in the premises.   It would be competent to authorize her to petition the Court, and the Court might, upon ascertaining her right, direct the commissioners to set apart her dower.

A statute is void only so far as its provisions are repugnant to the Constitution. (5)   This provision might be void, and not affect the other provisions of the statute.

The commissioners deny, in their answer, that they have assigned or attempted to assign the dower, and until they attempt to exercise that power, or express a purpose to do so, there could be no ground to restrain them from acting, simply because such an act exists upon the statute book.

There is no other portion of the acts objected to, on this ground. The preamble to a statute is no part of the act; still it may assist in ascertaining the true intent and meaning of the legislature. Private acts are construed in the same manner as conveyances

(1) 5 Cruise's Dig., pp. 10, 11, 12. §§ 34, 35, 36, 37, 38; Amb. 697; 3 Wils. 483; 1 Vent. 176; Godb. 167.     (2) 5 Cruise's Dig., title 33, pp. 6, 15, §§ 20, 41.
(3) 5 Cruise's Dig., title 33, pp. 7, 8, §§ 21—4; 2 Blac. Com. 345.
(4) Laws of 1838, 37.
(5) 3 Marsh. 73; 3 Wash. C. C. R. 313; 9 Wheat. 1, 209–10; 5 Peters' Cond. R. 562; 11 Peters 102; 2 Blackf. 8.
(6) 5 Cruise's Dig. title 33, p. 15, § 39; 1 Wils. 496; 2 Blac. Com. 345, note 1.

that derive their effect from the common law; (6) and the Court will consider what the object and intention of the parties were in obtaining the act.

In the case of Lane *et al. v.* Dorman *et ux.*, (1) the Court held the act of the legislature void, on the ground that it was a judicial determination that Robinson's estate was indebted to Lane, and empowered him to sell the realty, and to pay that debt, making no provision for other creditors.

But the Supreme Court of the United States has held, (2) that the legislature of Alabama may constitutionally pass a private act authorizing the attorneys of the administrators to sell the realty of the deceased, for the payment of his debts. So it has been held in Kentucky, that a special act authorizing an administrator to sell the real estate for the payment of debts, and directing him so to apply the proceeds, is constitutional. (3) Each act depends on its own special provisions and circumstances.

From the preamble of this act, it appears that the complainant, defendant Pope, and divers others, some known and some unknown, some residents and others non-residents, were owners of the premises, and that a division would be extremely difficult, if not impracticable. Therefore, to the end that it may be divided, or if indivisible, that it may be sold, the act authorizes any one interested to petition the Court, and the Court to appoint commissioners to divide or to sell; and because it is advantageously situated for a town site, for the benefit of the owners, and to enhance its value, the commissioners were authorized to lay it off into town lots and streets, to record a plat thereof, and sell the same, if ordered by the Court.

By every rule of interpretation applicable to this act, I cannot resist the conclusion, that all these proceedings are intended to enhance the interests of the proprietors. The State is not seeking to take private property for public use. It neither needs, asks, or requires a public highway there. The act declares the streets public highways, not because it wants one, but to secure, by this public easement, an increased competition and value to the lots. It is true the State can take no private property for public use, without the consent of the representatives of the owner, nor without first making just compensation. (4)

It is clear and manifest, that the intention of the parties and the legislature was, to enable the parties, by petition, through the order of the Court, and the action of the commissioners, to lay off the land into lots and streets; but because the proprietors might, at any time, resume their rights to the fee of the streets, to the injury of purchasers of lots, which would prevent their sale, at a fair value, the commissioners were empowered to record a plat, and when so re-

(1) *Ante* 238.　　(2) 16 Peters 59.　　(3) 4 Monroe 91; 6 Monroe 594.
(4) 1 Bald. C. C. R. 219.

corded, the streets were declared public highways.   This, then, but empowers the parties to do that for themselves, which they could not do by reason of infancy, their not being known, or being non-residents.   In Clarke v. Van Surlay, (1) a special act authorizing the sale of an infant's estate for her maintainance and education, was held to be constitutional.

In Beekman v. Saratoga and Schenectady R. R. Co., (2) a private act authorizing the company to take the land of the plaintiff, upon making a fair compensation, was held to be constitutional.

There can be no doubt that the legislature has power to pass a general law authorizing partition by laying off the land into lots; and authorizing a sale, when so laid off; and also declaring the streets in all towns surveyed and recorded, as public highways. And if it possesses this power, in the form of general legislation, I have no doubt of its right and power to exercise it in a special case.   The case of Watkins v. Holman et al, (3) before referred to, is much stronger than the one before us.

The courts of the United States adopt as their rule, the decisions of the State courts, in the interpretation and construction of their own constitutions and laws.   Committees of the Alabama legislature had made frequent reports that such laws were unconstitutional, and these reports had been acquiesced in for a long time. By general laws in Alabama, the realty had been subjected to the payment of debts, and the mode pointed out by petition to the Orphan's Court; and a complete remedy was provided, except that it did not extend to a non-resident administrator, which was the fact in that case.

The special act provided that the administratrix might sell the real estate, by her attorneys in fact, naming them, and apply the proceeds to pay the debts of the deceased.   This act was held to be constitutional, and not an exercise of judicial power.   The Constitution of Alabama is precisely like our own.   The Court says it is a question of policy, and not of power.

Unquestionably the legislature have power to subject all real and personal property to sale for the payment of debts, either by the creditor having first established his debt before a judicial tribunal, or by officers appointed by law.   If the legislature has the power to declare what shall be the lawful age at which minority shall cease, and an individual shall be capable of consenting or conveying, may it not also declare a particular minor capable of conveying during minority ?   Or if application be made on his behalf, for relief, may it not, by special law, give that consent for him, by declaring the sale valid, or by giving the power to his friend to convey for him ?

The opposition to such laws seems to be on the ground that the legislature acts contrary to the wishes and interests, and in violation of the rights of persons so circumstanced.   But the truth is,

(1) 15 Wend. 436.          (2) 3 Paige 45.          (3) 16 Peters 59.

these are intended to be, and are, remedial acts to effectuate the common rights of all, according to the Constitution and legal powers of the Government. The laws of descent might be so changed, as that the land should descend to the administrator, until all creditors were satisfied. The land is said to descend to, and absolutely vest in the heirs, and that it is a divestiture of their inheritance. Under our laws, subjecting these inheritances to the payment of debts, is not that descent to, and seizure of the heir, only a vested right *sub modo*, subject to be divested by a deficiency of assets?

It is difficult to lay down any general rule distinguishing between legislative and judicial acts; between what the legislature may rightfully do, and what it would be an infringement of private right, or a disturbance of a vested interest, to do.

In the case of Holden *v.* James' Adm'r, (1) the statute of limitations had run against the plaintiff's demand. Upon his petition to the legislature, an act was passed authorizing him to commence and prosecute his suit, "in the same way and manner as he might or could have done, if the same had been commenced within the time prescribed by law;" and the Court was authorized to give judgment, anything in any law to the contrary notwithstanding. This power of dispensing with, and suspending the general laws for particular cases, and authorizing judgment *non obstante* any statute, was held to be unconstitutional. But in the case of Calder *et ux. v.* Bull, (2) an act of the legislature of Connecticut granting a new trial, after the time of appealing had elapsed, was held to be constitutional, although the act is judicial in its nature; on the ground that it is usage in that State so to legislate, which is to be taken as evidence of its fundamental law, it having no written Constitution.

Each act of the legislature must depend upon its own particular phraseology and provisions. We will look to the particular circumstances of the parties applying for, and to be affected by it, as well as their intention, and the intention of the legislature, and the object to be accomplished. If from these, it be manifest that the legislature has exercised but a remedial power in enabling the parties to do with their own property, what they had not power before to do, and has not adjudicated that they should do, what they are unwilling to do, it seems to me the act would be within legislative competency.

The decree of the Court below is affirmed with costs.

*Decree affirmed.*

(1) 11 Mass. 400.  (2) 1 Peters' Cond. R. 179.