Walker, J., dissenting. It is very true that, originally, the common law Courts, in most cases, claimed exclusive jurisdiction over the subject of dower, and the usual remedy afforded was a “Writ of Dower unde nihil habet,” or by a “Writ of right of Dower.” Contemporaneously with the common law remedy, there existed .also an equitable jurisdiction over a particular class of cases, as, for instance, where the tenant held in capita, whose heir was in ward to the King, the widow sued for dower in chancery, and it was assigned her by commissioners appointed for that purpose. (Bac. Abr., “Dower,” p. 136.) This Court, under circumstances of peculiar hardship, was permitted to extend its jurisdiction over cases where, owing to circumstances, common law remedy, limited to certain defined rules in the development of facts and in rendering and executing judgments, could not afford to the parties adequate relief, until, by degrees, under an improved and liberal practice, it acquired a clear and well established concurrent jurisdiction with courts of law in such cases. This concurrent jurisdiction, under particular circumstances, commenced as early as the days of Elizabeth; and in the case of Wild vs. Wells, decided in 1583, dower was assigned in chancery by commissioners. A general, independent, concurrent jurisdiction, was perhaps first asserted and placed upon a more prominent and liberal footing after the very learned and able opinion delivered by Lord Alvanley, then master of the Rolls, in the case of Curtis vs. Curtis, 2 Brown Ch. R. 620. Judge Story, (1 Com. Eq. 579,) in reference to this case, says: “ But the propriety of maintaining a general jurisdiction in equity in matters of dower is still more fully vindicated in a most elaborate opinion of Lord Alvanley, when master of the Rolls, in a case which now constitutes the polar star of the doctrine.” And the same learned commentator, who pronounced so deserved an encomium upon the decision in the case of Curtis vs. Curtis, affirms that, at the present day, the doctrine is not only firmly settled in the American courts, but that “ Dower is highly favored in equity,” and cites, in support of this assertion, the declaration of Sir Thomas Tower, “ That the right, which a dowress has to her dower, is not only a legal right and so adjudged at law, but it is also a moral right to be provided for and have a main-tainance and sustenance out of her husband’s estate to live upon. She is, therefore, in the care of the law and a favorite of the law, and upon this moral law is the law of England founded as to the right of Dower.” (1 Story Com. Eq. 581, 583.) And for many years now has this equitable jurisdiction been not only fully recognized, but it has so completely superseded the common law remedy that the latter remedy, has totally fallen into disuse, and may well be considered obsolete, except perhaps in New Jersey, and as holding a place in the history of the early common law jurisdiction with many others alike useless in practice. This jurisdiction of the equity courts over dower (although it commenced, like nearly all the other cases of concurrent jurisdiction of this Court, in remedying the hardships and inconveniences of particular cases in which the common law remedy was found incompetent to afford relief) was ingrafted in a soil congenial to its growth. The condition and circumstances of the claimant and the subject matter and purpose of the application, held out strong inducements to this tribunal to apply its enlarged and liberal jurisdiction over this class of cases. Indeed, it is a species of guardianship extended over one, bereaved and destitute, with a mind ever sensitive, overwhelmed and prostrated by the severest calamity: one who, from the imposition of the rules of the common law upon her rights in marriage, has been cut off from all concern in the management of the real estate acquired by her husband, forbidden to inquire into and presumed to know nothing of the facts connected with the title under which he held, and not even allowed to possess herself of the title papers, which all go to the heir, and which are indispensably necessary to maintain her title at law. In tenderness to the life she has lead, (which, in fact, so far as the responsibilities of life are concerned, is but infancy,) forbidden and incapacitated in law to engage in litigation, until, most frequently at an advanced age .with a dependant family, she is suddenly called upon to compete with the acute, well trained mind in securing (perhaps) a home and shelter for herself and family. I repeat that, when thus situated she enters this new theatre in which the law has heretofore forbidden her to act, equity may well extend its indulgent protection over the widow and her shattered fortunes, and save them from the grasp of the strong and the relentless upon principles in analogy with cases of infancy orp even lunacy itself; not to secure to her rights greater than she is entitled to in strictness of law, but to protect those rights and see that she gets them, — -to afford her facilities in their attainment, which the common law courts are forbidden to extend. This jurisdiction, sustained and vindicated by these various considerations, so highly favored in equity, has a permanent hold upon the subject of dower, which has superseded and overshadowed all other jurisdiction, until it may be now considered an exclusive rather than a concurrent jurisdiction with courts of common law. Nor can I consent, as is contended in this case-, (and it is to be properly understood upon this point that I have glanced at the earlier jurisdiction of the courts in regard to dower,) that the rules of practice which were in use under the common law remedy shall be resorted to, either to furnish rules or to interpret those furnished by the courts of equity, for ascertaining and settling the rights of the parties under its jurisdiction. Whilst I fully recognize the obligations which Courts of Chan-cerycare under to determine the rights of the parties according to law, I have, at the same time, understood that, in the application of the remedy to those ascertained rights, its powers were plenary; nor have I found an authority, which raises a doubt in my mind of the power of the Court to shape its decree to the fullest attainment of the relief sought, or, when the points of. equity, upon which those rights arise, are before the Court, that it has the same right to determine finally upon them and render a final decree, that it has to reserve points of equity forfurther consideration ; and that, where the Court proceeds to pass upon them, and does so pass upon them, and directs the process by which the decree is to be executed, the decree must be taken as final upon those rights, unless by express reservation it is ordered differently. The importance which has been attached to the practice in the common law courts in regard to the assignment of dower, has not only imposed upon me this brief review of the jurisdiction of the several courts originally and at the present time, but will require a minute review of the authorities referred to in support of the practice itself, and such others as have come under my observation. Let it be borne in mind, also, that these authorities are not found in cases for partition of dower, but in partition between parceners and joint tenants, and it is only by analogy that the practice is sought to be applied to partition of dower. The action by writ of ‘partitione fadenda at the common law was only allowed to coparceners; joint tenants and tenants in common had no such remedy until it was given by statute 31 Henry 8, ch. 1. And it was the statute 8 and 9 William, ch. 31, which regulated the practice in such cases. By that act it was provided that, from and after the first day of May, 1697, “after process of pone or attachment returned upon a writ of partition and affidavit made of due notice given of said writ, if there be no appearance entered in fifteen days after the return in Court of such writ, then the demandant having entered his declaration, the Court may j^oceed to examine the demandant’s right and part, and, according as they shall find the same to be, they shall, for so much, give judgment and award a writ of partition, which writ being executed after eight days notice to the occupier, and returned and thereupon a final judgment entered, the same shall be good and conclude all persons whatsoever.” After giving specific directions as to the manner of executing the process, which it is not important to notice, the lith chapter declares that the act shall continue in force “ for seven years and until the next session of parliament.” From this act, it will be seen that the remedy and the practice are both created by statute, and that the provision relating to the practice was limited, expiring at the end of seven years. The principle, therefore, attempted to be drawn from it, cannot apply to dower because it grew out of no common law practice applicable to analogous cases, but out of a particular class of cases, not embracing dower within its provisions, inoperative by its own limitation, and never in force in America, having been passed since the 4th year of James I, and relating to an obsolete jurisdiction and practice — which never had an existence in our courts, so far as I have been advised, except in New Jersey. Had this been a contemporaneous common law practice, as seems to have been supposed, (but upon authority independent of this positive statute, which places the question, to my judgment, free from all doubt,) I will proceed to show it originated in a misapprehension of authorities by one Court which I suppose have been quoted without examination. The case of Putman vs. Lewis & wife, 1 Florida 474, is decided without assigning any reason for the opinion given, the Court simply citing authority; therefore it may safely be inferred that that Court made the decision upon the faith of the authority alone. 1 Coke Litt. 167 b, Thomas' Coke, 1 vol. 807, 808, 17 Vesey, and 8 Misso. R. 55, are cited as authority. 8 Missouri cites Thomas’ Coke 807, 808, and decides “That, in proceedings in partition, both at common law and chancery, there are two judgments and decrees.” Upon examination of Thomas’ Coke, we find that no reference whatever is made to chancery proceeding, but that the rule is held as correct only under a statutory remedy and special statutory practice, not under a common law practice. (Eng. Stat., vol 3, 168, note N. Thomas’ Coke 806, 807.) The only other authority cited in the Florida case is 17 Ves. 549. This case, so far from sustaining the doctrine of the two decrees, settles the very reverse to be the practice. The opinion, having been delivered by Lord Eldon, must be taken as high authority. It is as follows: “ This Court issues its commission not under the authority of any act of Parliament, but on account of the extreme difficulty attending, the process of partition at law, where the plaintiff must prove his title as he declares, and also the title of the defendants, and judgment is given according to the respective titles so proven. This is attended with so much difficulty that, by analogy to the jurisdiction of a court of equity in a case of dower, a partition may be obtained by bill. The plaintiff must, however, state, upon the record, hisbwn title and the title of the defendant. "With the view to enable the plaintiff to obtain a judgment for partition, the Court will direct inquiries to ascertain who are, together with him, entitled to the whole subject. If, therefore, the state of the record, as originally framed, is not such as to authorize the Court to say that the plaintiff and the defendants are respectively entitled to distinct shares comprehending the whole' subject, the proper course is to direct a reference to the master to ascertain what are the estates and interests of the plaintiff and the defendants respectively; and if it appear that they or some of them are entitled to the whole, then to order a partition according to the rights of all, or such of them as appear entitled, dismissing the bill as against those who do not appear to have any l’ight.” > From this opinion of Lord Eldon, it will be perceived that he expressly recognizes the doctrine that, where the rights and interests of the respective parties are ascertained, no reference to the master for that purpose is necessary; but that, in such case, the practice is directly to order a partition according to the rights of the parties or such of them as appear entitled and dismiss as to the others. For, when .he says that when the state of the record is such as not to authorize the Court to say that the plaintiff and defendant are entitled to distinct shares comprehending the whole subject, the proper course is to submit this to the master first to be ascertained, he evidently meant that, if the record did show that they were entitled to distinct interests embracing the whole subject, no such reference need be made, but the Court would proceed at once to decree and order the partition to be made, dismissing .as to those not entitled to partition. Indeed, this is not oniy'the nece’ssary inference from his language, but it will be found that he so e'xpressly declares. There is one fact in the history of this cáse worthy of notice: this was a question as to whether the Court would entertain a bill for partition, and the chancellor, in remarking upon that branch of the subject, expressly recognizes the superior and earlier jurisdiction of the chancery courts over dower. Thus it is seen that 1 Florida cites 8 Missouri, and 8 Missouri cites Thomas’ Coke, and that Thomas’ Coke, not only does not sustain the opinion in 8 Missouri, but expressly contradicts it, and shows that it was by express statute that the remedy was given, which also regulated the practice, and that 17 Vesey sustains the contrary doctrine. So that neither 1 Florida, nor the authorities referred to, sustains the decision of this Court. The case in 1 Call 51, involves the mere question whether a decree, admitted to be interlocutory by both parties,[could, by consent, be appealed from. Judge Roane, in delivering his opinion, refers to the statute as governing the proceeding, and says, “For example, in a writ of partition, the first judgment is that the sheriff take a jury and make partition between the parties. Now, though in executing this power he absolutely changes the possession of the land, no appeal by our act of Legislature will lie unless a final judgment is rendered upon the return of the sheriff of having executed the writ.” Now how did this sheriff derive his power to take a jury and make partition? .Not by the common law. We have seen that there was no common law right of action, and that the practice of a jury was under the statute of 8 and 9 William, and never in force in the United States. It was, then, of necessity, either under a statute of Virginia, or it was adopted as their chancery practice ; and if the latter, each chancellor has the' same right to have a fact ascertained by a jury, or he may refer it to the master, or to commissioners, or he may, in some instances, perform himself duties in ascertaining facts which he could, at his discretion, have referred to the master. And this accounts, I am persuaded, for the fact that several of the Virginia decision^fe^ÍOTSíSíS^ether reconcilable, upon any other principle, of decisions of our American courts ana) the most distinguished authors on chancery practice. Jj LAW SCHOOul The case in 2 Wash. 383, was |vh|r^ Jbpj^|ip|^.apt bought the land upon the joint account of mmself and the uj&intiff; the prayer was for partition and conveyaMcey^é'Cfee for plaintiff: an order was made to view the line of division and report. The evident reason why this was not a final decree, was, that the plaintiff acquired no title till conveyance was made; not so in dower: the widow takes no title under the decree, her title is coexistent with her husband’s, and, although held in abeyance during coverture, is liable to be asserted instantly upon his death. The cases in 3 J. C. Rep. 66, 123, 163, referring to the cases 9, 14, 15, 16 & 18, and 1 J. C. Rep., upon examination, will be found very remotely, in my opinion, to bear upon the question at issue. The case in 1 J. C. R. 77, refers alone to the question whether an appeal supersedes or stays all further proceedings in the Court below; and such will be found the only question presented upon the record in the other cases. I have not failed to examine the other cases in the Virginia Reports cited, although they appear to have been overruled by the same Court in 1 Leigh 124. That in 2 Hen. & Mun. 558, arose upon a question as to whether a judge in vacation had power to grant an appeal. The case of Elzey vs. Lane's ex., 2 Hen. & Mun. 594, has but one important feature in it, the question whether the decree was final was not discussed, but, from a single remark made by Judge Tucker, a clue may be got to the principle governing the decree in mortgage cases. The decree was to sell mortgage lands, and is evidently conditional, that is, it directs the land to be sold unless the money be paid on a day therein named. That this provision was the turning point in the opinion of the Judge, may be inferred from the fact that he not only referred to, but itali-cised, the words of the condition, “unles,” &c.; and, in this manner, the decisions in Virginia may be reconciled, upon this point, with the numerous authorities which would otherwise stand opposed to them. I am not aware of any other authorities bearing directly upon the point more immediately under consideration. And, from all that are cited in its support, and those to which I have turned my attention, I am satisfied that nothing can be deduced from the practice in the courts of common law in regard to partition and by analogy applied to petitions for dower; nor with regard to the early practice in cases of dower, which will tend materially to sustain the decision that the decree in the case under consideration is interlocutory. Having thus endeavored to disencumber the question from the inference attempted to be drawn, that it required two separate decrees in cases of dower before a final decision as it did under the statutory practice in the common law courts in cases of partition, I will proceed to the investigation of the main, indeed the only, point directly involved: that is, whether the decree in this case is a final or an interlocutory decree. In order to determine this, much depends upon the subject matter at issue, the scope and object of the bill, the time and circumstance under which the order or decree is made, the language used in making it and practice of the Court in view of its full and plenary powers in shaping its decrees and orders so as to afford ample redress, governed, however, in determining upon the rights of the parties, by the same rules of law, which control the common law courts, and are no more to be disregarded or overleaped in the one Court than in the other; preserving, at the same time, the most striking analogy between the two courts in the effect and'purpose of their respective proceedings, both in the adjudications upon the rights of the parties, and the process by which those rights are to be restored to the party entitled to enjoy them, (which is truly the end of' the law,) although different powers are conferred and different process may be used in ascertaing the facts upon which the judgment or decree is to be rendered; and also in the process by which the party shall be put into the enjoyment of those rights, marking each step in the progress of the cause by a definite, finite action: which illustrates and recognizes a principle pervading the whole science of pleading, which is, that, when the Court gives its finishing touch to one part of the pleading, it passes directly to another, and on to the final conclusion of the cause, which is the putting the party into the enjoyment of a legal right, and never permits subsequent defects to affect that which has been well done. Keeping in view these principles, I will proceed to lay down what I understand to be the difference between interlocutory and final orders and decrees. Daniel, in his Treatise on Pleading and Practice, (2 vol. 1192,) says: “An interlocutory decree is where the consideration of the particular question to be determined, or of further directions generally, is reserved to a further hearing; and the further hearing is termed a hearing upon further directions or upon the equity reserved.” This definition is fully sustained by an express recognition of the rule that it is the reservation of further directions which mainly tests the character of the decree in the cases of Thompson vs. Peeble’s heirs, 6 Dana 391. Hoag vs. Mills, 7 Paige 18. Cook vs. Bay, 4 Misso. 485. Harvey vs. Bronson, 1 Leigh 124. Weatherhead vs. James, 2 Ala. R. 176. Whiting et al. vs. United States Bank, 13 Peters 15. And at page 1214, 2 Danl. Ch. Pl. & Pr., it is said: “ That, where the decree is merely interlocutory, and directs an issue, or a case at law, or an enquiry to be made, or an account to be taken by the master, it usually contains a reservation of the further matters to be decided, and generally also of the costs until after the event of the issue or case, or of the enquiry or account, shall be known.” And this definition of an interlocutory decree harmonizes with that of a final decree, given at page 1199, by the same author, when he says : “That where the consideration of the points of equity is not reserved, nor further directions given upon the coming in of the master’s report, the decree is final.” Thus, to my mind, leaving this question settled by a mass of authority rarely to be found so invariably pointing to the same tests, in connexion with the state of the pleadings and the object of the order itself; and, from which, I think it may be safely said that the orders and decrees, which have for their object the ascertainment of facts and points of equity necessary to a proper understanding of the merits of the issue as presented upon the pleadings, are to be considered interlocutory, and are used in some respects as process to bring before the Court the evidences of the points of equity before it mider: the issue, and, in this respect, is, in its nature, assimilated to the common law process for that purpose. What has already been said in regard to an interlocutory decree, has anticipated and rendered unnecessary much that might be said in regard to a final decree. For, it is evident, that, just at the point where the one stops, the other must, of necessity, commence, and the principal difficulty exists in marking clearly this point and classing the decree under consideration. A final decree is that which does not reserve the consideration of the points of equity arising upon the determination of the legal rights of the parties, or of the further directions consequent upon the coming in of the master’s report or the costs of the suit. (2 Danl. Ch. Pl. & Pr. 1199.) It is that which decides the whole merits of the case, and reserves no further questions or directions for the future judgment of the Court. Mills vs. Hoag, 7 Paige 18. Cook vs. Bay, 4 How. Miss. R. 485. Lube, in his Equity Pleading, says: “ A final decree is the order of the Court pronounced upon hearing and understanding all the points in issue, and determining all the rights of the parties to the suit according to equity and good conscience.” (Lube 156.) In note 1 of this page, it is remarked: “That the reader will observe a similarity and effect of a decree and judgment at law. They are both the determination of the law upon some matter in controversy between the parties.” “ A decree is final when it decides all the matters in controversy, and the proceedings, to effectuate it, did not leave it open to revision of the same chancellor by motion.” Larue vs. Larue, 2 Litt. 261. “ A decree which settles the whole controversy, is final. The order for sale, though not effectuated, was but a ministerial act to effectuate the decree.” Field vs. Ross’ ex., 1 Mon. 137. “The decree adjusted the rights of the parties, and all that remained to be done was to execute and cany into effect that which had been settled by the Court. The act enjoined on the commissioners, to make partition, was ministerial. We deem such a decree as essentially final as would be a decree directing commissioners to make a conveyance, and report the deed at the next term. Talbot vs. Todd, 7 J. J. Marsh. 459. “A decree which settles all the rights of the parties except as to the amount of damages, and appoints commissioners to ascertain and report the amount of damages, and gives the directions necessary to dispose of the damages when ascertained and directs costs, is a final decree.” Taylor vs. Reed, 4 Paige 567. “A decree directing the payment of money, although the amount to be paid is not ascertained, is a final decree. It gives the consequential directions upon the coming in of the master’s report and directs costs.” Coithe vs. Crane, 1 Barbour C. R. 23. “ A decree which gives the consequential directions so as finally to dispose of the case upon the coming in and confirmation of the master’s report, by common order in the register without the necessity of bringing the case again before the Court for any other decree or directions, is final, although further proceedings must be had in the master’s office to carry the decree into effect.” Guackenburh vs. Leonard, 10 Paige 136. A decree which leaves nothing to be done in the cause, no subject to be acted upon or disposed of, is final. And as to the reservations in the decree, those and all similar reservations are simply provisions for the execution of the decree, and not reservations of any points for future consideration. (Harvey vs. Bronson, 1 Leigh 124,) Green, J., in delivering his opinion in this case, admits that the decision in this case is not altogether reconcilable with tbe former decisions of the Court, which is, in effect, overuling the decisions in the earlier Virginia Reports, going to sustain a different doctrine, and reconciles the whole current of American authorities, except perhaps 8 Missouri and 1 Florida Reports. “ A decree foreclosing a mortgage, and appointing commissioners to sell, is final.” Graham, &c. vs. Hardin's ex., 4 Dana 559. Hay vs. Shuley, 7 Ohio 48. Held that, upon the production of evidence or facts upon which a conditional decree was rendered, as it would make no alteration in the decree itself, but merely enabled the Court to direct for what sum the execution should issue, the decree was final. McGowan vs. Collins, 3 N. Car. Rep. 425. “ A decree is final when it ascertains all the rights of the parties in litigation.” (Wcatherhead vs. James, 2 Ala. R. 116.) “The acts which are to be done, as the decree points out the mode, and settles the principles by which these acts are to be regulated, are, in their character, ministerial, subject, to be sure, to the control and supervision of the chancellor.” Id. “ Where all the facts necessary to an adjudication of the whole merits of the controversy were before the Court, and its judgment was just as conclusive, as respects the merits, as though it. had been the last decree in the cause, in order to carry into execution the decree, the master was directed to cause the premises to be appraised and set off to the complainant. ■ It was also necessary, in order to consummate the proceedings, that an order should be taken in respect to the doings of the master. But this order never brings before the chancellor the merits of the former final decree, but simply the regularity of the proceedings of the master. The Court, in other words, examines his doings to ascertain whether its mandate has been obeyed. This last order confirming the acts of the master may be the subject of appeal.” (Benedict vs. Thompson, 2 Michigan R. 302.) The statute of Michigan is precisely such as ours. “ A decree for sale under mortgage, is final. Marshall, C.J., (3 Cranch 179.) The question was whether the decree of foreclosure and sale is to be considered as the final decree in the sense of a court of equity, and the proceedings on that decree a mere mode of enforcing the rights of the creditor and for the benefit of the debtor: or whether the decree is to be deemed final only after the return and confirmation of the sale by a de-cretal order of the Court. Stout, Justice, after stating the case, said: “We are of opinion that the former is the true view of the matter. The original decree and the sale were final upon the merits of the controversy. The defendant had a right to appeal from that decree as final upon the merits, as soon as it was pronounced. The ulterior proceedings are but a mode of executing the original decree/like the award of an execution at law.” Whiting et al. vs. United States Bank, 13 Pet. 15. There are still other American authorities bearing on this point; but I apprehend that these are sufficient to settle the character of the decree under consideration, so far as the opinions of our ablest judges may have weight as authority in any caseembracing, as they do, nearly every variety of case known to chancery,jurisdiction. They, to my mind, show most conclusively that, when the merits of the question at issue are brought before the Court and passed upon, and directions given for the the execution thereof, the decree is final, as much so, and to the same extent, as a judgment at law would be upon the issues of fact before a Court of common law jurisdiction. I do not question, in the slightest degree, that the decretal orders and the report of the master may be modified, corrected, or the subject re-referred to the master or commissioner without affecting the decree upon the merits any more than the setting-aside of a fieri facias, or habere facias possessionem, would affect the judgment at law. And I think the authorities abundantly sustain the position that, where any of the decretal orders for the execution of the' decree upon the merits of the case, are decided contrary to the equitable or legal rights of the parties, the party aggrieved may appeal from such decision, just as he could in a Court of law where his process for the execution of judgment in that Court was quashed improperly. This question was improperly settled in the case of Benedict vs. Thompson, 2 Michigan R. 306. It only remains for me to apply these principles to the case under consideration. The complainant asserted title to dower in three lots of land, as the widow of Robert Crittenden, and also in the rents and profits therein from the death of her husband, and prayed that the facts being heard she be decreed dower in the lots and rents and profits. To this petition there was an answer and replication. Exhibits were filed and depositions taken in support of the issue, and the case came on to be heard upon the bill, answer, replication, exhibits and depositions. The whole issue involved á few plain, definite points: 1st. That the complainant was the widow: 2d. That her husband was, during cover-ture, seized in fee of the lots: 3d. The identity of the lots, and the defendant’s possession: 4th. The rents and profits since the death of her husband. (The law fixed, the amount of dower.) The answer fully admitted the 1st and 3d points, but denied the 2d, and, as a necessary consequence, her right to dower: leaving, in fact, but two questions open, that is, whether the husband was of not seized during coverture, and whether complainant was entitled to dower in the rents and profits; and, if so, how much. Upon these points, depositions and exhibits were used in evidence. The Court, after hearing the whole of the facts at issue and the argument, decreed that “ The petitioner be assigned dower in said lots, amounting to one-third part thereof, for and during her natural life, and that the said defendant pay to the said petitioner the sum of six hundred and sixty-six dollars, the one-third part of the rents, issues, and profits of said lots, which, by the proofs in the cause, have accrued since the death of the said Robert Crittenden to this time. And that Benjamin Johnson, Nicholas Peay, and Peter T. Crutchfield be, and they are hereby, appointed commissioners to proceed to the premises, and, by actual survey and admeasurement, to lay off and ascertain the boundary line of such dower in said lots and buildings thereon; and to take an account of the rents, issues, and profits accruing to the said defendant from said lots from this time until the next term of this Court, and add one-third thereof to the sum above decreed to be paid. And that said commissioners make return of their proceedings to the next term of this Court, to which term this cause is continued.” Let us pause for a moment to enquire what fact or point of equity in this issue remained undetermined. It could not be that petitioner was the widow, nor in regard to the identity or minute description of the lots, nor that defendant was in possession, and, too, under the deed of the husband. These facts were all admitted by the answer: and, as the affirmative fact set up in the answer, that the husband only held in naked trust, and in regard to rents and profits, these points were fully before the chancellor in proof. All the facts, then, I apprehend, and every point of equity which could arise, was before the Court, and passed upon. Nothing was reserved for further consideration, nor indeed could any have been reserved unless it be costs, (to which I will refer soon.) These facts having been presented and passed upon, it is perfectly immaterial, so far as this question is concerned, whether they were correctly decided or not. The decree was final until reversed or set aside. But it is contended that no costs were decreed. That is a mere circumstance, which only tends to indicate the intention of the Court at the time the decree is rendered, and if not provided is lost. The decree is just as final without as with the decree for costs. Travis vs. Waters, 1 J. C. R. 88. Story vs. Livingston, 13 Pet. 368. But it is contended that the decree was not final, because the particular third-part had not .been ascertained by metes and bounds, and that the same principle applies in this case as in bills for partition. I have already shown that the practice in partition depended upon a special statute of England never in force in America, and therefore wholly inapplicable; but it is so for another reason: in partition, the parties acquired their titles after the coming in of the commissioner’s report, when, if there is no exception, the order is made in affirmance, and mutual conveyances directed to each for his separate estate, for the purpose of vesting an absolute legal title in them. And this is held to be necessary because by a petition in equity the equitable right only is vested. (2 Danl. Ch. Pl. & Pr. 1339.) In New York’ there is an express statute obviating this difficulty in decrees in chancery, declaring that the property pass in fee by the decree. (Young vs. Cooper, 3 J. C. R. 295.) Our statute is like that of New York, and no doubt intended to obviate the same inconvenience. Digest 241, sec. 120, declares: “That decrees for the conveyance of real estate, or for personal property, shall pass the title to such estate or property without any act to be done on the part of the defendant.” Therefore, conceding this to be really a case of partition, independent of the numerous authorities to which I have referred, the decree would be final. But there is a marked distinction between dower rights and partition, which I think places this point beyond all controversy. The widow acquires no new freehold under the decree, but is in by her husband, her seizen being deemed in law to be a continuation of her husband’s seizen. (4 Greenl. R. 67. 3 Blackf. 1. 1 Pick. 314. 23 id. 88. Park on Dower 153.) In the case of Windham vs. Portland, (4 Mass. 388.) it was held, “That, when the assignment is made, the widow acquires no new freehold, but is in by her husband, her seizen being deemed a continuation of his.” This position must, therefore, fall for either of the reasons above, independent of that clear and, to my mind, well defined principle, which is recognized so repeatedly, that the partition is a mere ministerial act, to put the party into the enjoyment of a legal right ascertained and adjudged to her. The case of Larue vs. Larue, (2 Litt. Rep.,) is far stronger than this. The rights of the parties were declared by the decree, and commissioners appointed to convey, but no title passed under the decree until conveyance, (Kentucky has no statute like ours,) and yet that Court said, “ The decree was final as to the whole contest. All that could have lead to the supposition that the decree was interlocutory and not final, was that the conveyances directed were not made, and a commissioner appointed for that purpose. All that this commissioner had to do was ministerially to carry the decree into effect. As well might it be said that if the decree was for money, and the party obtaining it had not coerced the payment by process of contempt, that the decree was not final.” And to the same effect are the decisions in New York, Mississippi, Alabama, North Carolina, Ohio, and Michigan, sustained by Chief Justice Marshall and Justice Story, if not in precise language, most decidedly in the principle, that after-acts, in obedience to the decretal order, are ministerial. Suppose, however, that the commissioners should report in this case, what would be the action of the Court? What consequential order was there reserved for further consideration? What effect could the report, in any event, have upon the rights settled in the decree ? It is difficult to conceive. Will it be said that the Circuit Court anticipated something that might arise ? What could it have been? And if such apprehension was entertained by tjie Court, why was not the decree shaped to meet it? Or if there existed some vague, dreamy apprehension, indefinable and therefore not to be expressed, at least a reservation of further consideration should have been made. This question, when submitted to the following test, is, to my mind, conclusive. The report of the commissioners, when received, must either be used as evidence of some necessary fact to enable the Court to render a final decree, or it must furnish materials for a second decree; and if for the first purpose, we must pre-suppose that something was left unfinished and reserved for further action when the report furnishing such evidence should be made. A single glance at the decree in this case shows that no fact remained to be ascertained when it was made in order to enable the Court to pass upon all the rights at issue between the parties. Indeed the report, be what it might, could furnish no such evidence, nor was the report ordered for that purpose: nor was it for the purpose of making any further decree, because, as I have shown, no action is necessary on the part of the Court to confer title to the particular portion so to be set apart by the commissioners. The simple fact of approving and ordering the report to be filed being all-sufficient, or if the order had not been properly executed, to direct a new commission until the decree is executed. It does appear to me that a more clear and definite subject for decree can scarcely be conceived than the one before us. Nor is it often to be found that the decree itself is so definite, not alone in passing upon all the equities of the case, but in giving all the consequential directions for the execution of the decree, so definitive in detail that the Court, not instructed in regard to the rents between the decree and the coming of the report, directed its division and then the disposition to be made of it. Why this circumstantial direction, if further decree was to be had ? And if any further should be found necessary, would that direction tend to affect the final character of the decree any more than the issuance of another writ would in common law proceedings ? — ever bearing in mind that the chancellor, as he created, has the same power to change or modify his process to suit the emergencies of each case. I have been wholly unable to draw the distinction which is made between this and all other cases within the range of chancery jurisdiction. To my mind, they all stand upon the same clear and well-defined principles and rules of practice, in spirit and purpose strongly assimilated to proceedings at law, according to the chancellor the power, with a plastic hand, to shape and mould his remedy to suit the peculiar circumstances of each case. A different view from that which I have taken, must tend to delay the administration of justice by requiring the litigant, who is aggrieved by the judgment and decision of the Court, to wait until all the reports have been made and the decretal orders executed, before he is allowed to controvert the correctness of a decision which, if erroneous, nullifies all that is subsequently done. With the utmost deference and respect for the opinion of the Court in this case, and, after the most mature deliberation, having been unable to arrive at the same conclusion to which they have, in obedience to the statute, I have presented my individual views, upon which I entertain no doubt. But, even if I did, although I should ordinarily most cheerfully acquiesce in the opinion of my brother Judges, I could not consent to do so in a case like the present, where, in doing so, I must overrule a former decision of this Court in every respect in point; for I hold it to be the duty of the Court never to reverse one of its decisions when it is doubtful only whether it is correct or not. I think, therefore, that a Mandamus should issue in this case requiring the Circuit Court to proceed to execute the decree rendered by the Circuit Court herein. The petitioner filed a petition for reconsideration, which was not granted by the Court. Scott, J. On the application for reconsideration. I have read, with care and attention, the petition, and have considered of the matters urged. My opinion in this case, which is against my first impressions, was by no means hastily formed; nor was it formed until upon proper reflection after much toil and research. And, during the few weeks which have elapsed since its • delivery, my mind has occasionally reverted to its grounds; as is habitual with me on subjects on which my mental powers have been severely taxed. Butnothing that has now been offered, nor which has occurred to me by the suggestion of my own mind, is of sufficient import, in my judgment, to shake the propriety of those conclusions. It is therefore, although I doubt not that the learned counsel is deeply, thoroughly, and sincerely convinced of the merits of this application, that I cannot hesitate, so far as I am concerned, to give it my refusal. And feeling, as I do, that, in all its stages, I have given to the consideration of this case my best judgment, and, being unable to perceive that I have erred, I adhere to the opinion that I have, already given with unfaltering confidence.