CRENSHAW *et al.*, Appellants, v. SNYDER.

Division Two, June 27, 1893.

1. **Public Road:** COUNTY COURT ORDER: OVERSEER: TRESPASS. An order of a county court, valid on its face directing a road overseer to open a road through the premises of another, affords a good defense to the overseer in an action by the land-owner for trespass.

2. ——: ——: ——: ——. The recital in the order of the relinquishment of the right of way, where minors had an interest in the land and the failure to designate the time within which owners should give possession, did not render the order of the court void on its face.

3. ——: ——: ——: CONSTITUTION. Nor was the officer deprived of his right to rely on the order of the court as a defense by the constitutional guaranty that private property shall not be taken for public use without just compensation.

*Appeal from Greene Circuit Court.*—HON. ―――――
Judge.

AFFIRMED.

*James R. Vaughan* for appellants.

(1) The constitution provides that private property shall not be taken for public use without just compensation, and such provision deprives the order of the county court of any effect as a justification for defendant. (2) The law requires that a relinquishment of this right of way should be obtained, or that commissioners should be appointed and damages assessed and paid before any entry could be made on the land, and neither was done in this case. (3) A void order of the county court can in no case protect a road overseer in the commission of a trespass. An order merely informal or irregular will protect him. *Warrensburg v. Miller,* 77 Mo. 57; *Dickson v. Rouse,* 80 Mo. 227; *Carpenter v. Grisham,* 59 Mo. 247. (4) Every road overseer is conclusively held and presumed to know upon whose land he is entering, and in this case that he was entering upon land of minors; and this being so, as his order recited that "the right of way had been relinquished," he thereby had notice that plaintiff's proprietary rights had not been divested, as neither the plaintiffs nor said curator could relinquish their interest in the lands for said purposes. (5) The power to take land for road purposes is in derogation of common law and common right, and, if after proceeding begun, any essential prerequisite is omitted, subsequent action becomes null and void. Although there may have been notice in the road proceeding in evidence in this case and a good petition, the failure to appoint commissioners to assess

plaintiff's damage nullified the entire proceeding. *Anderson v. Pemberton,* 89 Mo. 61.

*H. E. Havens* for respondent.

(1) Where the court has jurisdiction of the subject matter and the process under which the officer proceeds is regular on its face, he cannot be held liable in damages for trespass. *Melcher v. Scruggs,* 72 Mo. 476; *Brown v. Harris,* 52 Mo. 306; Freeman on Executions, secs. 99 and 100; *Peery v. Gill,* 36 Mo. App. 685. (2) The constitutional provision relied on by appellants is inapplicable.

GANTT, P. J.—The petition in this case contains two counts. The first count states a cause of trespass *quare clausum fregit,* in wrongfully entering upon the north half of south half of section 2, township 28, range 22 and north half of south half of section 3, and north half of southeast quarter of section 4, all same township and range, in which lands it is alleged plaintiffs have each one-twelfth interest and are in possession, and in cutting trees, destroying fences and rails, to plaintiff's damage, in the sum of $375. The second count avers the cutting of the timber and removal of fences and the threat to continue so doing by defendant, and his insolvency, and prays an injunction.

The answer was, *first,* a general denial; *second,* that defendant at the time he was charged with entering on said land, was road overseer of the road district embracing said lands, and that as such road overseer, under and by virtue of an order of the county court of Greene county, Missouri, directing him to open the same, he did so open a public road by entering on a strip of land fifty feet wide, beginning at the northeast corner of southeast quarter of section 2, township 28, range 22, on the Wilderness road, thence west along the

half-section line .dividing sections 2 and 3, and to the middle of section 4, and on the Fayetteville road, and that under said order and entry he removed obstructions from said strip and road.

The third defense stated that one Bently, as administrator of L. A. D. Crenshaw, plaintiff's ancestor, had been ordered to sell lands of said Crenshaw, and that in this order this strip on which defendant entered had been by the probate court set aside and reserved as a public road.

The fourth defense pleaded that in a partition suit between the heirs of L. A. D. Crenshaw, the commissioners reported that owing to the great extent of the lands belonging to the parties to the said suit, in Greene county, and the manner in which the lands lay, it was impossible to divide the land without the establishment of some new roads, and that they had established a public road the entire distance between sections 2 and 3, and 10 and 11, forty feet wide, and that the road between sections 2 and 3, including forty feet of the strip of fifty feet on which the defendant had entered, and that this report and decree had been confirmed by said court, and on account of the matters pleaded said injunction should not be made perpetual.

Plaintiffs filed a replication to the same, being a general denial. A temporary injunction was granted.

At the trial, the evidence by plaintiffs showed that Fannie Crenshaw had been, by the probate court of Greene county, Missouri, appointed guardian and curator of all the plaintiffs, except Susanna; that plaintiffs each owned one-twelfth interest in the land described in the petition, which was farm land, four miles south of Springfield, and the other children of L. A. D. Crenshaw, the remaining interests; that the plaintiffs were in possession of said land and that the

defendant had entered on a strip fifty feet wide lying
on the south side of the line dividing sections 2 and 3
in two equal parts by running a line east and west,
cut down and removed trees and some fencing, and
that this fifty-foot strip would include one or two graves
in a family burial ground on the land; that plaintiffs
had rebuilt the fences and that they had been torn
down again and rebuilt, and that defendant had threat-
ened to tear down and remove the fences on this fifty-
foot strip, and that if these fences were removed it
exposed plaintiffs' land to the inroads and invasion by
stock, which was running at will and unconfined upon
the roads and commons adjoining these lands, which
were in cultivation and contained growing crops.
Plaintiffs' evidence also tended to establish the amount
of damages averred in this petition.

On the trial defendant offered in evidence the
following order of the county court of Greene county,
of record in book K, page 263, and made November 8,
1887:

"In the matter of Road Petitioned ⎱
    for by L. H. Murray *et al.*    ⎰ Ordered Opened.

"The road commissioner having filed his report of
the review of a road petitioned for by L. H. Murray
*et al.*, commencing at the northeast corner of the
southeast quarter of section 2, township 23, range 22,
on the county road commonly known as the Wilderness
road, thence west along the half section line dividing
sections 2 and 3, to middle of section 4, and ending at
the intersection of the county road commonly known
as Fayetteville road, all of said road to be on the south
side of said half-section line; and it appearing to the
satisfaction of the court, that said petition was signed
by at least twelve free-holders of the township, three

of which, to-wit, J. E. Putnam, I. N. Brockman and J. P. Edwards, reside in the immediate neighborhood of the road; and it further appearing to the court that due legal notice has been given, and the right of way has been relinquished; it is therefore ordered by the court that said road be, and is, hereby established as a public road, and ordered open of the uniform width of fifty feet as above described.''

Defendant in the course of his testimony said:

''*Q.* State if you entered on the land charged in this petition, what position you held at the time, and in what capacity you acted? *A.* I held the position of road overseer at the time I entered upon the land, and I was acting as such. The clerk of the court delivered this order to me. After I got that order I met Mrs. Crenshaw one day, and I told Mrs. Crenshaw I was going to open the road; that I had gotten an order from the county court. She says to me 'I wish you wouldn't cut that front hedge down that is along the Wilderness road, until I get my stock pastured.' I told her I would do so; I would cut the other hedges down and leave that till towards spring, which I did. So two or three days after that I went and notified the hands, and we went to work.''

Defendant offered in evidence a petition and decree in a partition suit entitled, ''Fannie Crenshaw *et al. v.* Walter L. Crenshaw *et al.*,'' in which partition suit the plaintiffs here were likewise plaintiffs appearing in that suit by their guardian.

The petition was in ordinary form, setting forth interest of parties in the land, capacity of parties to the suit, but said nothing about laying out roads or highways, and contained neither allegations or prayers as to the roads through the lands.

The decree found the respective interests of all parties and appointed commissioners, but contained

nothing whatever about roads or highways through the land. The commissioners made a report dividing the land, and submitted with their report a map or plat showing a road on strip entered upon by defendant.

The report among other things contained a reference to the roads as follows: after setting out the lands described in the petition in this suit to plaintiffs, and certain other lands to other parties, it proceeds:

"Subject, however, to and with the easement of the roads and highways hereinafter mentioned laid out and established.

&ast;  &ast;  &ast;  &ast;  &ast;

"Your commissioners further report that on account of the great extent of the lands in said Greene county, and the way in which they lie, it was impossible to advantageously divide the same as directed by the court, without the establishment of some new roads through them, and we have accordingly established and laid out the following road, to-wit:

"Also a public road forty feet wide, along the entire north line of the south half of section two and the south half of section three," which embraced the north forty feet of the fifty-foot strip entered upon by the plaintiff.

Defendant also offered in evidence the judgment of the circuit court of Greene county, Missouri, confirming said report. This was simply a judgment to that effect, and made no specific reference to the roads.

To the introduction of this petition, answer, decree, report and confirmative decree, the plaintiffs objected, for the reasons that the proceedings shown thereby occurred since the institution of this action, and because the circuit court as against these plaintiffs had no power to dedicate land to public use in a partition suit, and any order to that effect is invalid. But the court overruled these objections, and admitted the

same in evidence; to which action of the court the plaintiffs excepted at the time.

The defendant's evidence also tended to show that plaintiffs' damage, if any, was not as claimed, and but slight. Defendant rested, and in rebuttal plaintiffs offered in evidence all the files and papers "In the matter of the road petitioned for by L. H. Murray et al."

*The appellants concede that the petition in this road matter was, as such, good and sufficient, and that notices of the same were shown on the trial to have been duly posted.*

The bill of exceptions recites that "there was in said files and papers no relinquishment of the right over land, or damages assessed for the taking of said lands, nor was there any damages assessed by freeholders, or anyone." These were all the papers in said files relevant to the matter involved in this case.

Mrs. Fannie Crenshaw, guardian and curator of the minor plaintiffs, had never received any compensation for road purposes for the land entered on by defendant, nor had any damages been assessed to her knowledge. This was all the evidence in the case.

Plaintiffs asked the court to declare the law as follows:

"1. That upon the evidence in this case the plaintiffs are entitled to recover upon the first count in said petition.

"2. That upon the evidence in this case the plaintiffs are entitled to recover upon the second count in said petition."

"5. The court also excludes from its consideration the order establishing, and to open road along line as opened by defendant for reason said order is a nullity.

"6. That the order to open the road is void, among other reasons, because the same does not set forth the time when possession was to be given to the public or road overseer.

"7. The court declares as the law: That a road overseer has no right to go upon a new road, or tract of land to be opened for a road, until after expiration of the time within which possession is to be retained by owner; and if the order specifies no time, it is void.

"8. That when a road overseer enters upon lands for the purpose of opening a public road, he is conclusively held to know, or take notice, of the ownership and title to the land, and in this case that plaintiffs were owners of land in petition described; and that the order offered in evidence is a nullity, and as it recites on its face that said minors had relinquished the right of way or land for the road, and as defendant, as a road overseer, is also held to know that this could not be done, it is no protection to him.

"9. That the constitution of this state provides that the proprietary rights of the owner shall not be divested nor the property disturbed until the land is taken by due process of law; and as the proceedings for opening the road in the county court are void, and the rights and ownership of the plaintiffs have not been divested in the land taken or entered upon by defendant, the order to open the road was and is a nullity, and no protection to the officer.

"10. That the proceedings in the county court for opening the road are a nullity, in so far as they relate to these plaintiffs:"

But the court refused to so declare.

Of its own motion, and at defendant's request, the court declared the law as follows:

"1. The court declares the law to be that on the evidence the plaintiffs are entitled to have the injunction made perpetual as to the south ten-foot-wide strip off of the fifty-foot-wide strip described in plaintiffs' petition. But as to the remaining forty feet of said strip, being the first forty feet south of the line running east and west through the centers of sections 2 and 3, the plaintiffs are not entitled, on the evidence, to have said injunction made perpetual, and as to the said strip forty feet in width, the injunction will be dissolved.

"2. The court declares the law to be that if it believes from the evidence that the defendant was road overseer, and as such entered upon the lands of plaintiffs under an order of the county court, to open a public road through the same and that he entered on said land in good faith under an order, directing him as such road overseer to open said road in his district, then said order will protect him from any action of trespass and damages instituted by plaintiff or any person through whose lands said road may run; and it makes no difference whether the proceeding of the county court establishing said road was regular or not, and the verdict should be for defendant.

"3. The court declares the law to be that if the county court of Greene county, Missouri, by an order duly entered on record established the road and directed the defendant as road overseer to open the same running through plaintiffs' land, and that he entered thereon in good faith and opened the same as such road overseer, under the order of the county court, then the verdict should be for the defendant.

"4. The court declares the law to be that if it believes from the evidence that the plaintiffs as a part of the heirs of L. A. D. Crenshaw, brought suit for the partition of the lands described in the suit against

the other heirs of the said deceased, and that the com-
missioners appointed in said proceeding to allot and set
apart said lands among the parties made a report to
the circuit court, setting apart forty feet of said strip
of land as a public road for public use, and that said
report was approved by said court, then the plaintiffs
are not entitled to have said injunction made perpetual,
as to said forty feet width of said fifty foot strip.''

And to this action of the court in so doing the
plaintiffs excepted at the time. The court, on first
count, found the issues for the defendant, and on the
second, or injunction count, refused to make the injunc-
tion perpetual as to the north forty feet of the strip
over which defendant opened the road, but as to all the
lands, except this forty feet, it made the injunction
perpetual.

I. The instructions given and refused very clearly
indicate the points of controversy in this cause.

The plaintiffs assume that the order of the county
court establishing a public road of the uniform width
of fifty feet on the strip of land on which the alleged
trespass was committed, and directing it to be opened,
was and is void on its face, and affords no protection to
the road overseer who opened the road.

Plaintiffs concede that the petition for this road
was good and sufficient; that it stated all the facts
necessary to vest jurisdiction over the subject-matter of
the action in the county court of Greene county; and
they also agree that notices of the same were shown to
have been duly posted. They rely upon the recital, that
"the right of way has been relinquished," to avoid the
order, because, they claim, in this way it appeared that
the minors who were incapable of relinquishing their
right of way had never been compensated for the same,
nor the easement lawfully obtained. Whereas the
    Vol. 117—12

defendant and the circuit court held the view that as the county court was invested by law with the original, exclusive authority, and power to hear applications for and remonstrances against the establishing and opening public roads, upon petition and notice, and inasmuch as it affirmatively appeared that a petition averring every necessary jurisdictional fact had been presented to the county court for the establishment and opening of this road, and due notice thereof given as required by law, that court obtained jurisdiction in this case, and it matters not if some irregularity or error afterwards crept into its proceedings, its judgment is binding in all collateral proceedings in which it is drawn in question, and its order being regular on its face, will protect the road overseer.

We think this position of defendant is unquestionably correct. In *Walker v. Likens*, 24 Mo. 298, Judge Scott, in one of his characteristic sentences, expresses the rule, as follows: "Hard would be the condition of road overseers and the hands compelled to work roads, if, at their peril, they were bound in all instances to see that the orders under which they were acting were regular and in conformity to the constitution and laws. It is obvious that the rigid enforcement of such a doctrine would stop the opening and repairing of roads, and would operate as a repeal of the statute on that subject. The county court had jurisdiction of the subject-matter, and it sufficiently appears that the plaintiffs had notice of its proceedings. Under these circumstances, if there was error or irregularity in the course pursued, the duty required of the plaintiffs was that they should resort to the remedies afforded by the constitution and laws for relief. They being in court, and having notice such as the law required, ought to have adopted means to obtain redress for the wrong of which they complain."

In *Wyatt v. Thomas*, 29 Mo. 23 (1859), this court approved the decision of Judge Scott in *Walker v. Likens, supra,* in the following language:

"In the case of *Walker v. Likens,* 24 Mo. 298, an owner of land was not allowed to maintain trespass against the overseer of a road, who was acting under the orders of the county court in proceeding to open a road over the land of the party complaining, although it did not appear, from the report of the commissioners who laid out the road, that the complaining owner had consented to the road going over his land or that the proper steps had been taken to condemn the land to public uses as in case of the owner's refusal. Here was a case where a constitutional safeguard had been set at naught; but the remedy was not considered to lie in an action against the officers who were but acting in conformity with the orders of the court having jurisdiction over the subject."

In *Dunbar v. Weightman,* 51 Mo. 432, this court again said: "An order of the county court directing the road overseer to open any road in his district will protect him from an action of trespass and damages instituted by any one through whose land said road may be located, and the jury cannot inquire into *the regularity* of the county court's proceedings in locating said road."

The order in evidence in this case was not void on its face either because of the recital as to the relinquishment of the right of way, nor because it failed to designate the time within which the owners should give possession. At most the neglect to specify the time was only an irregularity or error, from which in this case no harm resulted as it seems to be uncontradicted that the overseer, at the request of Mrs. Crenshaw, left the hedge to protect the pasture until the next spring after the order, which was made November 8, 1887. *Howard v. Clark,* 43 Mo. 344; *Dickson v. Rouse,* 80 Mo.

227; *Lingo v. Burford*, 112 Mo. 149; Freeman on Executions, sec. 101.

II. By their ninth instruction plaintiffs seek to have the order declared void because by the constitution they were guaranteed just compensation for their land before it could be subjected to the public use, but they overlook the fact that it was for this very purpose they were brought into court. When the proper petition was filed and due notice given them, it was their privilege to claim in that court all their rights whether they were secured to them by the constitution, or the statutes, or the common law, but having permitted a final judgment to go upon their own default without asking or obtaining their damages in that cause in that court, they will not be allowed to sue the officer whose duty it is to obey that judgment. As to him it is not material whether the irregularity arose from a failure to observe the constitution, instead of a statute. The origin or cause of the irregularity or error in the judgment cannot increase or lessen the officer's liability. *Walker v. Likens*, 24 Mo. 298; *Evans v. Haefner*, 29 Mo. 141 *loc. cit.* 148.

The adoption of the constitution of 1875 had no effect upon the rule that an officer is protected by a writ regular on its face, emanating from a court that has jurisdiction of the subject-matter of the action and over the parties thereto. The instructions of the court on this point and its findings were in harmony with the well approved law of this state, and it becomes unnecessary to consider the effect of the order in the probate court or the judgment in partition.

The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.